833 P.2d 244

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Reyes RODRIGUEZ, Defendant–
Appellant.**

**No. 12840.**

Court of Appeals of New Mexico.

March 19, 1992.

Certiorari Denied April 30, 1992.

Tom Udall, Atty. Gen., Patricia Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Susan Gibbs, Santa Fe, for defendant-appellant.

## OPINION

PICKARD, Judge.

Following an altercation at a wedding in Carlsbad, defendant threw a "Molotov cocktail" into a home occupied by twelve people who had been at the wedding. This single act served as the basis for fifteen charges against defendant, consisting of twelve counts of aggravated assault with a deadly weapon and one count each of arson, dangerous use of explosives, and possession of explosives. The jury returned guilty verdicts on all fifteen counts.

The trial court merged the explosives counts with each other and with the arson count for sentencing, but imposed sentence for each offense, running them concurrently with one another. The court also ran the sentences for those counts concurrently with the aggravated assault convictions, but imposed consecutive sentences for each assault. In addition, defendant's sentence was enhanced by one prior felony, pursuant to the Habitual Offender Act, and aggravated by the trial court, pursuant to NMSA 1978, Section 31–18–15.1 (Repl.Pamp.1987), for a total sentence of thirty-six years' imprisonment.

On appeal, defendant argues that (1) double jeopardy prevents his convictions and sentences on all counts except that of ar-son, contending that the explosives and aggravated assault counts merge with the arson count. He also argues that (2) the trial court erred in denying a change of venue, (3) he was denied effective assistance of counsel at trial, and (4) the state engaged in misconduct when it called a witness for the sole purpose of impeaching her with otherwise inadmissible hearsay evidence. We reverse on a portion of the first issue and affirm the remaining issues.

## I. DOUBLE JEOPARDY

This case is unusual in that it involves one act, multiple victims, and one trial, which resulted in fifteen separate convictions and sentences under compound criminal statutes. As a preliminary matter, we note that the state has conceded that count three, possession of explosives, merges with count two, dangerous use of explosives, for sentencing. We are not bound by the state's concession, *State v. Maes*, 100 N.M. 78, 80, 665 P.2d 1169, 1171 (Ct. App.1983), but believe that the state is correct. *Cf. State v. Medina*, 87 N.M. 394, 534 P.2d 486 (Ct.App.1975) (possession of marijuana is lesser included offense of distribution of marijuana). Because the trial court ruled that counts two and three merged, but nevertheless imposed separate convictions for these counts, the possession conviction must be vacated. *See State v. Pierce*, 110 N.M. 76, 792 P.2d 408 (1990).

The remaining questions of whether the charge of dangerous use of explosives and the counts of aggravated assault also merge with arson are more problematic. In *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991), the New Mexico Supreme Court articulated the test to be applied in "double-description" cases, *i.e.*, cases in which the defendant is charged with violations of multiple statutes that may or may not be deemed the same offense for double jeopardy purposes. *See also State v. Gonzales*, 113 N.M. 221, 824 P.2d 1023 (1992). Under *Swafford*, the conduct at issue is first examined to determine whether it is unitary. In general, conduct is unitary if (1) it violates both statutes, and (2) no time, space, or conduct

divisions exist on which to base a finding that the conduct underlying any of the charges was separate or distinct from that underlying any other charge. *Swafford*, 112 N.M. at 13–14, 810 P.2d at 1233–34. Notwithstanding the state's arguments to the contrary, we find that the defendant's conduct in throwing a Molotov cocktail was unitary. *Cf. Gonzales*, 113 N.M. at 224, 824 P.2d at 1026 (where defendant fired multiple gunshots in rapid succession, unseparated by time or space, into victim's truck, conduct was unitary).

The second part of the test examines the statutes at issue to determine whether the legislature intended to create separately punishable offenses. Absent a clear expression of legislative intent, reviewing courts must examine the elements of each statute to determine whether one statute is subsumed within the other. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234 (citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)). Where one statute is not subsumed within the other, a presumption arises that the legislature intended separate punishments, but that presumption "is not conclusive and * * * may be overcome by other indicia of legislative intent" and application of the canons of statutory construction. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234; *see also Gonzales*, 113 N.M. at 224–25, 824 P.2d at 1026–27.

Both parties in this case rely on *Swafford*, but while *Swafford* provides guidance, as does *Gonzales*, we do not believe that by themselves they resolve the issue of how to handle the complicated problem of compound criminal statutes written in the alternative, such as those at issue here. We set forth the pertinent statutory elements of arson, dangerous use of explosives, and aggravated assault below to illustrate their compound nature:

### Arson

Arson consists of maliciously *or* willfully starting a fire *or* causing an explosion with the purpose of destroying *or* damaging any building, occupied structure *or* property of another * * * *or* with the purpose of destroying *or* damaging any property * * * to collect insurance for such loss. [Emphasis added.]

NMSA 1978, § 30–17–5(A) (Repl.Pamp.1984).

### Dangerous Use of Explosives

Dangerous use of explosives consists of maliciously exploding, attempting to explode *or* placing any explosive with the intent to injure, intimidate *or* terrify another, *or* to damage another's property. [Emphasis added.]

NMSA 1978, § 30–7–5 (Repl.Pamp.1984).

### Aggravated Assault

Aggravated assault consists of *either:*

A. unlawfully assaulting *or* striking at another with a deadly weapon;

B. committing assault by threatening *or* menacing another while wearing a mask, hood, robe *or* other covering upon the face, head *or* body, *or* while disguised in any manner, so as to conceal identity; *or*

C. willfully and intentionally assaulting another with intent to commit any felony. [Emphasis added.]

NMSA 1978, § 30–3–2 (Repl.Pamp.1984).

To complicate matters further, the jury in this case was instructed in the alternative on the aggravated assault charges and on the charge of dangerous use of explosives. As to the aggravated assault charges, the jury was informed that defendant could be found guilty if the jury determined that, as to each victim:

1. The Defendant tried to burn the victim; the defendant intended to burn the victim; and the defendant acted in a rude, insolent or angry manner;

### OR

The defendant started a fire in the [house where the victim was sleeping]; this caused the victim to believe he or she was about to be burned; and a reasonable person in the same circumstances as the victim would have had the same belief;

AND

2. The defendant used an instrument or object which, when used as a weapon, could cause death or very serious injury[.] [Emphasis added.]

*See* SCRA 1986, 14-306. As to the charge of dangerous use of explosives, the jury was instructed that it should determine whether defendant "detonated [an] explosive device * * * with the intent to injure, or intimidate, or terrify another person; *or*," alternatively, that defendant did so with the intent "to damage another's property" (emphasis added). As to the arson charge, the jury was instructed in only one alternative, that defendant started a fire with the intent to destroy a house belonging to another. In keeping with the second prong of the *Swafford* test, we note that none of the statutes at issue contains a clear expression of legislative intent to create separately punishable offenses. *Swafford,* 112 N.M. at 14, 810 P.2d at 1234. We also note that the fifteen verdicts returned by the jury in this case were general verdicts and thus do not indicate the basis for the jury's determination of guilt.

In a footnote to *Swafford,* the supreme court suggests that an exception to the traditional *Blockburger* elements test, focusing on the provisions of the statute under which a defendant is charged in the indictment, may be appropriate for coping with the "complicated problem of compound and predicate offenses." *Swafford,* 112 N.M. at 8, 810 P.2d at 1228 n. 4. In that note, the court cites a federal case for the proposition that "a criminal statute written in the alternative creates a separate offense for each alternative and should therefore be treated for double jeopardy purposes as separate statutes would." *Pandelli v. United States,* 635 F.2d 533, 537 (6th Cir.1980). In *Pandelli,* the federal court determined that the defendant could not be sentenced for both transporting a female across state lines for the purpose of prostitution and for travel to promote prostitution or other crimes, even though the two statutes in question each contained an element that the other did not. *Id.* at 535-36, 539.

Analyzing statutory elements from the vantage point of the particular case before the court, as was done in *Pandelli,* enables a reviewing court to remain faithful to legislative intent to provide alternative means of prosecution against a single category of wrongdoers, and to avoid the confusion and injustice that may arise from looking at statutes in the abstract when each statute contains an element which the other does not. *See id.* at 535-38. What the *Pandelli* court did in applying the *Blockburger* test was to "go further and look to the legal theory of the case or the elements of the specific criminal cause of action for which the defendant was convicted without examining the facts in detail." *Pandelli,* 635 F.2d at 538. This approach makes sense, for, as the *Pandelli* court stated:

> [A] statute that is multi-purposed and written with many alternatives, or is vague and unspecific, may have many meanings and a wide range of deterrent possibilities.... It therefore makes more sense to ascertain the operation and deterrent purposes of such statutes for double jeopardy purposes by determining the elements—the legal theory—that constitute the criminal causes of action in the case at hand.

*Id.* at 538-39. Applying this analysis to the case before us, we believe that the crime of dangerous use of explosives merges into defendant's conviction for arson.

As stated above, the only theory of arson submitted to the jury was that defendant started a fire with the intent to destroy a house belonging to another. Dangerous use of explosives was submitted on two alternative theories, both requiring that defendant detonated an explosive device, defined as including a device used to start a fire. One theory required that he intended to injure, intimidate, or terrify a person; the other required that he intended to damage property. Because of the use of general verdicts in this case, we cannot ascertain on which theory of guilt the jury's verdict was based. *Cf. People v. Lowe,* 660 P.2d 1261, 1271 (Colo.1983) (approving the use of special verdicts in multiple count/alter-

native theory case because if the jury is asked only for a general verdict, there is no way to decide on appeal which alternative theory of guilt was chosen, and in such a case an error relating to either count could void the entire verdict).

The conduct forbidden and the societal evil addressed by both the arson statute itself and one of the applicable alternatives proscribing dangerous use of explosives used in this case, *see Swafford*, 112 N.M. at 14–15, 810 P.2d at 1234–35, is starting a fire to damage property. Disregarding the inapplicable alternative elements of both statutes, as suggested by *Pandelli*, the remaining elements of arson and dangerous use of explosives are identical. Therefore, unless the presence of another applicable alternative mandates a different re-·sult, defendant's separate conviction for dangerous use of explosives cannot stand, and his sentence for that crime must also be vacated. *See State v. Pierce; see also People v. Lowe.*

Because there were two alternatives of dangerous use of explosives submitted to the jury, it is possible that the jury convicted defendant pursuant to a theory (intent to injure, intimidate, or terrify a person) that does not merge. Had the state limited its theory to the intent to injure a person, or had it requested special verdict forms so that we would know whether defendant was convicted on both theories, then, for the reasons stated below, multiple punishments would have been proper. However, because the state did neither of these things, we are unable to determine whether a double jeopardy violation occurred. Under these circumstances, defendant's conviction for dangerous use of explosives must be set aside. *Cf. State v. Shade*, 104 N.M. 710, 728, 726 P.2d 864, 882 (Ct.App. 1986) (where one of two alternatives is impermissible, general verdict is set aside and case is remanded for a new trial on permissible alternative).

■ Similarly, defendant argues that his convictions and sentences for aggravated assault merge with those of arson and must be reversed. We disagree. Having resolved that defendant's conduct was uni-

tary, and that the statutes do not expressly provide for multiple punishments, we must determine legislative intent by applying the *Blockburger* test to determine "whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182; *see also State v. Gonzales; Swafford v. State.* Conviction of arson in this case requires proof of intent to damage property; conviction of aggravated assault in this case requires proof of use of a deadly weapon to assault or strike at another. Even having disregarded the inapplicable alternatives in each statute, *see Pandelli v. United States*, it is obvious that convictions of arson and aggravated assault do not merge because they require proof of different facts and theories.

■ The fact that each statute requires proof of an element absent in the other raises a presumption of legislative intent to punish each offense separately. *State v. Gonzales; Swafford v. State.* In order to rebut this presumption, there must be a showing of contrary legislative intent as evidenced by the " 'language, history and subject of the statutes[,]' " by differences in the particular evil addressed by each statute, by a showing that the statutes are usually violated together, by comparison of the punishment inflicted for violating each statute, and by other relevant factors. *Gonzales*, 113 N.M. at 224–25, 824 P.2d at 1026–27 (quoting *Swafford*, 112 N.M. at 14, 810 P.2d at 1234).

■ Having examined the arson and aggravated assault statutes in light of these factors, we are convinced that the legislature intended separate punishment for these crimes. The aggravated assault statute is aimed at deterring aggression against other people in which the use of deadly weapons is involved. The section of the arson statute at issue here is designed to protect property interests. Clearly, the statutes protect different interests. *See State v. Gonzales.* Furthermore, "while [these] statutes ... may be violated together, they are not necessarily violated together." *Id.*, 113 N.M. at 225, 824 P.2d at 1027. Finally, the punishments for violating the

two statutes are different, and "[p]unishment for a violation of either statute is not enhanced for a violation of the other." *Id.* We therefore find that the legislature intended separate punishment for unitary conduct violating both statutes. *See id.; Swafford v. State.*

## II. CHANGE OF VENUE

██ Defendant argues that the trial court erred in failing to grant his motion for a change of venue and thereby violated his rights to due process and a fair trial. As defendant acknowledges, the trial court possesses broad discretion in dealing with motions for change of venue, and we will not disturb its decision on appeal absent a showing of an abuse of that discretion. *State v. Martin,* 101 N.M. 595, 607, 686 P.2d 937, 949 (1984). The trial court found that no recent publicity had been given to the case; that the publicity which had occurred over six months earlier was no greater than that given to other, similar matters; and that the issues of pretrial publicity and relationships with the victims could be adequately probed during voir dire. During voir dire, prospective jurors were questioned concerning their knowledge of the events at issue and the people involved, and none of them reported any knowledge concerning the case or potential partiality concerning the people involved. Under these circumstances, there was no abuse of discretion. *Cf. Fuson v. State,* 105 N.M. 632, 735 P.2d 1138 (1987) (new trial ordered where juror was too familiar with the individuals involved to be totally impartial).

## III. INEFFECTIVE ASSISTANCE

██ Defendant contends that his trial attorney rendered ineffective assistance of counsel by (1) failing to adequately investigate his case, including the grounds for his change of venue motion; (2) failing to adequately prepare for trial; (3) failing to impeach a prosecution witness on the basis of his bias against defendant; (4) breaching the duty of loyalty to a client; and (5) failing to preserve defendant's claim of prosecutorial misconduct for appellate review. To show ineffective assistance of

counsel, defendant must demonstrate that counsel's performance was below the level of a reasonably competent defense attorney and that such performance "prejudiced defendant in such an extreme way that the adversarial process cannot be relied on as having produced a just result." *State v. Powers,* 111 N.M. 10, 11–12, 800 P.2d 1067, 1068–69 (Ct.App.1990) (citing *State v. Talley,* 103 N.M. 33, 702 P.2d 353 (Ct.App. 1985)).

With regard to claims one through four, we have reviewed the record and have determined that it contains an insufficient factual basis for review of these claims on direct appeal. *See State v. Powers.* Therefore, we do not address them as they are more properly suited to review in a postconviction proceeding. *Id.*

██ In his fifth claim, defendant argues that trial counsel was ineffective in failing to object to testimony given by defendant's stepmother, Mary Duarte, and in failing to include the related issue of prosecutorial misconduct in eliciting this testimony in the docketing statement. For the reasons stated below, defendant has failed to demonstrate that he was prejudiced in such an extreme way that the adversarial process cannot be relied upon as having produced a just result. *See id.; State v. Talley.* The evidence against defendant in this case was very strong, and defendant has not shown that but for counsel's conduct concerning these matters, the result of the proceeding would have been different. *See State v. Taylor,* 107 N.M. 66, 752 P.2d 781 (1988), *overruled on other grounds, Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 779 P.2d 99 (1989).

## IV. PROSECUTORIAL MISCONDUCT

██ Defendant complains that the prosecutor acted improperly in calling defendant's stepmother as a witness for the purpose of impeaching her when she denied having repeated certain inculpatory statements, allegedly made by defendant, to FBI agents. After her testimony, the state called the FBI agents to testify, and they stated that Mrs. Duarte had told them that

defendant admitted to starting the fire at the victims' house and said that next time he would use a machine gun.

Defendant relies on *State v. Duran,* 107 N.M. 603, 762 P.2d 890 (1988), in contending that the state's calling of Mrs. Duarte solely to impeach her was fundamental error, even though trial counsel did not object on this basis, or on the basis of hearsay or confrontation and due process. "The doctrine of fundamental error * * * will be invoked by an appellate court only when the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or when the court considers it necessary to avoid a miscarriage of justice." *State v. Ortega,* 112 N.M. 554, 566, 817 P.2d 1196, 1208 (1991).

We will not apply the doctrine of fundamental error here. The evidence against defendant included direct evidence of the altercation at the wedding and eyewitnesses seeing him drive past the victims' house shortly before the fire-bombing. There was circumstantial evidence that, before the fire-bombing, defendant purchased a glass bottle of orange juice at a convenience store because a plastic water bottle would not do. A similar glass bottle was found at the scene, and cloth diapers and a hose smelling of gasoline were found in defendant's car. Forensic analysis tied these items to the crime scene. In contrast, members of defendant's family provided defendant with an alibi. The easily discredited alibi was no match for the strong circumstantial and direct evidence against defendant. Therefore, we find that no miscarriage of justice has occurred, and we will not invoke the doctrine of fundamental error. *See id.*

CONCLUSION

Defendant's convictions for arson and aggravated assault are affirmed. His convictions for dangerous use of explosives and possession of explosives are reversed.

IT IS SO ORDERED.

MINZNER and CHAVEZ, JJ., concur.