2001-NMCA-009

19 P.3d 825

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Daniel LEFEBRE, Defendant–Appellant.**

No. 21,057.

Court of Appeals of New Mexico.

Jan. 30, 2001.

Patricia A. Madrid, Attorney General, Steve Suttle, Assistant Attorney General, Albuquerque, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

BUSTAMANTE, Judge.

{1} Daniel LeFebre (Defendant) appeals his convictions for driving under the influence, failure to demonstrate proof of financial responsibility, reckless driving, and two counts of resisting, evading or obstructing an officer. Defendant contends: (1) he was denied his right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution; (2) the two counts of evading an officer are based on a single episode of flight and violate the double jeopardy clauses of the United States and New Mexico Constitutions; and (3) he was denied his due process right to a fair trial due to prosecutorial misconduct. We reverse on the speedy trial issue and remand for reconsideration. Concluding that the legislature has not clearly expressed an intention for multiple punishments for unitary conduct that violates several sub-sections of NMSA 1978, § 30–22–1 (1981), we reverse and remand to the trial court with instructions to vacate Defendant's conviction and sentence for one count of resisting, evading, or obstructing an

officer. Finally, we conclude that the Defendant's due process rights were not violated due to prosecutorial misconduct and affirm the trial court on this issue.

## I. BACKGROUND

{2} In the early morning hours of October 16, 1998, the Defendant led police on a high-speed automobile chase through the streets of Santa Fe and on Interstate 25. The chase began when the Defendant made a u-turn against a red light in the Santa Fe city limits and was pursued by a member of the Santa Fe Police Department. The chase ended nearly a half-hour later when the Defendant unsuccessfully attempted to negotiate an exit from the interstate south of Santa Fe, causing his automobile to leave the pavement, cut through a barbed wire fence and come to rest in a field. Defendant then got out of his car and fled from police on foot. He was apprehended a short time later while hiding under a tree. It appeared to officers that the Defendant was unsteady on his feet and that his eyes were bloodshot and watery. At trial, an officer trained as a drunk driving enforcement officer testified that the Defendant exhibited all the classic signs of someone who was extremely intoxicated. The Defendant refused to submit to a field sobriety regimen or a blood alcohol test.

{3} Defendant was arrested, taken into custody and charged with driving while under the influence of intoxicating liquor and/or drugs (DUI), failure to demonstrate proof of financial responsibility, reckless driving, and four counts of resisting, evading or obstructing an officer; one for each officer who pursued the Defendant during the chase. At the same time Defendant was also served with and arraigned on a fugitive complaint from Pima County, Arizona. The State seems to have anticipated that Arizona would pursue extradition of the Defendant. However, no action was ever taken by either Arizona or New Mexico on the Arizona charges. Meanwhile the State took no action to dismiss the magistrate court case and the magistrate court did nothing with the case, perhaps expecting it to be dismissed pending a felony grand jury indictment.

{4} The State finally presented the case to the grand jury on April 1, 1999—two weeks before the six-month rule on the magistrate court case was set to expire. Defendant was indicted on the previously mentioned charges. Though Defendant had been held in custody since his arrest in October, an arrest warrant was issued and Defendant was arraigned May 3, 1999, on the grand jury indictment. Unable to post bond Defendant remained in jail. Several bond reduction hearings took place—on June 7, 1999; June 14, 1999; June 21, 1999; and June 28, 1999. Defendant was ultimately released on June 28, 1999, after being incarcerated for over eight months.

{5} Defendant's case was set for trial on September 8, 1999. Defendant filed a motion to dismiss for violation of his right to a speedy trial on July 23, 1999. The motion was denied on August 12, 1999. Jury selection took place on September 7, 1999, and the trial began and concluded on September 22, 1999. The delay in this case was over eleven months from the date of Defendant's arrest on October 16, 1998, to the date his trial began on September 22, 1999.

{6} Defendant was originally charged with four counts of violating Section 30-22-1. The State based the four counts on the fact that four separate police officers had attempted to apprehend the Defendant and he refused to bring his vehicle to a stop and instead attempted to evade each one of them. The grand jury's indictment contained the same wording as found on the original charges and reflected the State's continuing theory that Defendant was guilty of violating Section 30-22-1 for attempting to evade four separate police officers. None of the four charges mentioned the fact that the Defendant had attempted to flee on foot from the officers. Ultimately, the trial court directed a verdict on two of the counts of evading.

## II. DISCUSSION

### A. Speedy Trial

■ {7} At the August 12, 1999, hearing on Defendant's motion to dismiss on speedy trial grounds, the trial court ruled that the eleven-month period it took the State to

bring the Defendant to trial was not "presumptively prejudicial" because the case was of intermediate complexity. *See Salandre v. State*, 111 N.M. 422, 428, 806 P.2d 562, 568 (1991) (concluding that a minimum of nine months delay is necessary to trigger further inquiry into the claim of a violation of the right to a speedy trial in simple cases, twelve months in cases of intermediate complexity, and fifteen months in complex cases). Defense counsel argued this was a simple case and a delay of nine months was presumptively prejudicial. The State argued that the case was of intermediate complexity because it had difficulty obtaining from the Department of Motor Vehicles (DMV) the paperwork necessary to prove a charge of felony DUI.

{8} The trial court's findings in support of its ruling that the case was of intermediate complexity were: the case included an additional count of evading arrest, the State "acted in good faith" in getting the DMV paperwork necessary to establish the Defendant's prior convictions for DUI, and the State "diligently sought records."

■ {9} The State bears the primary responsibility of bringing cases to trial within a reasonable time. *See Zurla v. State*, 109 N.M. 640, 644, n.2, 789 P.2d 588, 592, n.2 (1990). Speedy trial violations are evaluated under the four factors of *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972): the length of the delay, the reasons for the delay, the assertion of the right, and prejudice to the defendant. The first factor, the length of the delay, is treated as a "triggering mechanism." *Zurla*, 109 N.M. at 642, 789 P.2d at 590 (Baca, J., dissenting). Unless the length of delay is presumptively prejudicial, there is normally no reason to analyze the remaining three factors in the balancing test. *See id.* Whether the length of delay in a particular case acts to trigger inquiry into the remaining *Barker v. Wingo* factors depends on the specific circumstances of the case. Once a defendant establishes that the State failed to prosecute his case within general time limits, which depend on the complexity of the case, the burden shifts to the State to prove that his right to a speedy trial was not violated. *See Salandre*, 111 N.M. at 428, 806 P.2d at 568.

■ {10} The level of complexity of a case is best assessed by a "trial court familiar with the factual circumstances, the contested issues and available evidence, the local judicial machinery, and reasonable expectations for the discharge of law enforcement and prosecutorial responsibilities." *State v. Manzanares*, 1996–NMSC–028, ¶ 9, 121 N.M. 798, 918 P.2d 714. The assessment is in no sense mechanical and trial courts are given reasonable latitude for decision making. However, the scope of trial court discretion in assessing the complexity of a case is not without limits.

■ {11} Though they do not admit to any particular formula, simple cases require less investigation and tend to involve primarily police officer testimony during the trial. For instance, in *Salandre*, this Court ruled that a case involving simple drug and firearm charges where the "linchpin of the State's case was the testimony of the arresting officer" was a simple case. *Salandre*, 111 N.M. at 428, 806 P.2d at 568. In a case analogous to this case, *Manzanares*, the New Mexico Supreme Court upheld a trial court ruling that a case in which the defendant was involved in a head-on automobile collision and was charged with vehicular homicide, driving while intoxicated, and driving recklessly, was a simple case. *See Manzanares*, 1996–NMSC–028, ¶ 9, 121 N.M. 798, 918 P.2d 714.

{12} New Mexico courts have also provided guidance as to what constitutes a complex case. In *State v. Coffin*, 1999–NMSC–038, ¶ 57, 128 N.M. 192, 991 P.2d 477, our Supreme Court held that death penalty cases are presumptively complex. In *State v. Grissom*, 106 N.M. 555, 561, 746 P.2d 661, 667 (Ct.App.1987), we held a case that "present[ed] allegations of white collar criminal activity involving several defendants, [and] multiple transactions involving large sums of money" was complex. We noted that the pre-trial appellate record was voluminous, exceeding 150 tape recordings of hearings and 17 volumes of transcript. *See id.* at 557, 746 P.2d at 663.

{13} We have held that a case was of intermediate complexity on only one occasion. *See State v. Ortiz–Burciaga,* 1999–NMCA–146, ¶ 31, 128 N.M. 382, 993 P.2d 96. In *Ortiz–Burciaga,* the defendant was charged with five counts of criminal sexual penetration of a minor under thirteen. The victim was in the second grade at the time of the alleged crime. The case included video tape depositions of the victim, testimony of an examining physician, expert testimony from the victim's counselor, expert testimony by psychologists, and testimony from several other witnesses. *See id.* ¶ 5.

{14} In this case, by contrast, the State's witness list consisted of five Santa Fe police officers who were to testify on their pursuit of the Defendant after he executed an illegal u-turn and fled. The evidence proving the DUI charge would not require any expert testimony since the Defendant refused to submit to an alcohol breath test. Further, the DMV paperwork substantiating the Defendant's prior convictions for DUI, which was at the heart of the State's argument that this was a case of intermediate complexity, would primarily impinge on sentencing and not on the evidence as to the historical facts of the case. The facts here are fairly straightforward. Under New Mexico law this is clearly a simple case for purpose of speedy trial analysis. We reverse the finding that this case is of intermediary complexity and remand to the trial court to evaluate if Defendant's right to a speedy trial has been violated applying the *Barker v. Wingo* factors.

### B. Double Jeopardy

{15} Defendant, relying on his constitutional right to protection from double jeopardy as guaranteed by the Fifth Amendment to the United States Constitution and Article II, Section 15 of the New Mexico Constitution, contends that a single episode of flight from police officers cannot support conviction for two counts of resisting, evading or obstructing an officer. The Defendant argues that there was only one event consisting of his flight from police officers in Santa Fe and ending upon his apprehension in the trees south of the city. Put another way, Defendant asserts that his intent throughout was to evade apprehension by the police and only the means to this end changed. We agree that Defendant's acts support only one crime founded on resisting, evading or obstructing an officer.

{16} The double jeopardy clauses of both constitutions protect against multiple punishments for the same offense. *See Swafford v. State,* 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991). Our Supreme Court has adopted a two-part test to be used in analyzing a double jeopardy claim based upon so called "double-description" cases. *State v. Barr,* 1999–NMCA–081, ¶ 11, 127 N.M. 504, 984 P.2d 185 (Holding that when a defendant is charged with violations of multiple statutes that may or may not be deemed the same offense for double jeopardy purposes). Our Supreme Court summed up the test:

> The first step is to ask whether the conduct underlying the offenses is unitary, i.e., whether the same conduct of the defendant violates more than one statute. The second step is to ask whether the Legislature intended to impose multiple punishments for the unitary conduct. Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial.

*State v. Carrasco,* 1997–NMSC–047, ¶ 22, 124 N.M. 64, 946 P.2d 1075 (citations omitted; internal quotation marks omitted). "[A] criminal statute written in the alternative creates a separate offense for each alternative and should therefore be treated for double jeopardy purposes as separate statutes would." *State v. Rodriguez,* 113 N.M. 767, 771, 833 P.2d 244, 248 (Ct.App.1992) (quoting *Pandelli v. United States,* 635 F.2d 533, 537 (6th Cir.1980)).

{17} Conduct is unitary if it is not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished. *See State v. Livernois,* 1997–NMSC–019, ¶ 20, 123 N.M. 128, 934 P.2d 1057; *State v. Contreras,* 120 N.M. 486, 490, 903 P.2d 228, 232 (1995). "If two events are sufficiently separated by either time or space (in the sense of physical distance between the places

where the acts occurred), then it is a fairly simple task to distinguish the acts." *Swafford,* 112 N.M. at 13–14, 810 P.2d at 1233–34. Time and space considerations, however, cannot resolve every case and resort must be had to the quality and nature of the acts or to the objects and results involved. *Id.* at 14, 810 P.2d at 1234. *See also Herron v. State,* 111 N.M. 357, 359, 805 P.2d 624, 626 (1991) (describing factors determinative of whether separate and distinct acts of criminal sexual penetration have occurred).

{18} The State argues the Defendant may have had a singular purpose, to evade officers, but he intended to do so in at least two distinct ways, by automobile and on foot. Further, it asserts that Defendant's failure to successfully negotiate an exit from the interstate highway and his ensuing automobile accident constitute an intervening event that ended the Defendant's first act contrary to Section 30–22–1—his refusal to stop his vehicle when directed to do so by officers—and began a second act that is contrary to the statute, the evasion of the officers on foot. We are not persuaded by this reasoning and find that the Defendant's actions can only be reasonably deemed to constitute unitary conduct. *Swafford,* 112 N.M. at 13, 810 P.2d at 1234.

{19} Having determined that the conduct was unitary, we reach the second step in the *Swafford* analysis and must ask "whether the legislature intended multiple punishments for unitary conduct." *Swafford,* 112 N.M. at 14, 810 P.2d at 1234. The double jeopardy clause does not prevent the legislature from authorizing multiple punishments for the same conduct. *See State v. Nunez,* 2000–NMSC–013, ¶ 49, 129 N.M. 63, 2 P.3d 264; *see, e.g., Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). In determining legislative intent, we apply the test articulated in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to the elements of each statute, to see "whether each provision requires proof of an additional fact which the other does not." If that "test establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy

purposes-punishment cannot be had for both." *Swafford* 112 N.M. at 14, 810 P.2d at 1234. "Conversely, if the elements of the statutes are not subsumed one within the other, then the *Blockburger* test raises only a presumption that the statutes punish distinct offenses. That presumption, however, is not conclusive and it may be overcome by other indicia of legislative intent." *Id.*

{20} Starting the second step in the *Swafford* analysis, we note that the statutes at issue do not contain a clear expression of legislative intent to create separately punishable offenses for the unitary conduct of evading the police. Thus, we inquire whether the Legislature intended to impose multiple punishments for the unitary conduct through use of the *Blockburger* test. *Swafford,* 112 N.M. at 14, 810 P.2d at 1233. The *Blockburger* test asks whether Section 30–22–1(B) & (C) require the proof of an additional fact. *Swafford,* 112 N.M. at 14, 810 P.2d at 1233. The statute states in pertinent part:

Resisting, evading, or obstructing an officer consists of:

B. intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him;

C. willfully refusing to bring a vehicle to a stop when given a visual or audible signal to stop, whether by hand, voice, emergency light, flashing light, siren or other signal, by a uniformed officer in an appropriately marked police vehicle;

Section 30–22–1(B) & (C). Examining Section 30–22–1 reveals that sub-section (B) requires an element, an intent to flee or evade, that sub-section (C) does not. Sub-section (C) also differs from sub-section (B) in its requirement that a vehicle must be involved. Thus, under the *Blockburger* test a presumption that the statutes punish distinct offenses would be established. *Swafford,* 112 N.M. at 14, 810 P.2d at 1233. However, we have previously noted that while *Swafford* provides guidance, it does not by itself necessarily resolve the issue. *See State v. Rodriguez,*

113 N.M. 767, 770, 833 P.2d 244, 247 (Ct.App. 1992).

{21} In *Rodriguez* we noted that in a footnote to *Swafford,* our Supreme Court suggested that an "exception to the traditional *Blockburger* elements test, focusing on the provisions of the statute under which a defendant is charged in the indictment, may be appropriate for coping with the 'complicated problem of compound and predicate offenses.'" *Rodriguez,* 113 N.M. at 771, 833 P.2d at 248, (quoting *Swafford,* 112 N.M. at 8, n.4, 810 P.2d at 1228, n.4). The exception was based on *Pandelli.* In *Pandelli,* the court analyzed statutory elements from "the vantage point of the particular case before the court," in determining that defendant could not be sentenced under the two statutes in question even though each contained an element that the other did not. *Pandelli,* 635 F.2d at 536. The *Rodriguez* court stated that analyzing statutory elements in this manner "enables a reviewing court to remain faithful to legislative intent to provide alternative means of prosecution against a single category of wrongdoers, and to avoid the confusion and injustice that may arise from looking at statutes in the abstract when each statute contains an element which the other does not." *Id.* at 771, 833 P.2d at 248. The *Rodriguez* court adopted this approach in ruling that the crime of dangerous use of explosives merged into the defendant's conviction for arson. *Id.* We relied on the following passage from *Pandelli* in explaining our acceptance of this approach:

[A] statute that is multi-purposed and written with many alternatives, or is vague and unspecific, may have many meanings and a wide range of deterrent possibilities.... It therefore makes more sense to ascertain the operation and deterrent purposes of such statutes for double jeopardy purposes by determining the elements—the legal theory—that constitute the criminal causes of action in the case at hand.

*Rodriguez,* 113 N.M. at 771, 833 P.2d at 248, (quoting *Pandelli,* 635 F.2d at 538–39). We find this reasoning persuasive in deciding this case.

{22} In applying the *Rodriguez* court's *Blockburger* analysis to this case, we must "go further and look to the legal theory of the case or the elements of the specific criminal cause of action for which the defendant was convicted without examining the facts in detail." *Rodriguez* at 771, 833 P.2d at 248, (quoting *Pandelli,* 635 F.2d at 538). As to the charge that Defendant violated Section 30–22–1(B), the jury was instructed that it should determine whether Defendant, "with the knowledge that [a police officer] was attempting to apprehend or arrest him, fled, attempted to evade or evaded the officer." The jury was instructed under Section 30–22–1(C) that it should determine whether Defendant "knowing that an officer was attempting to apprehend or arrest him did willfully refuse to bring a vehicle to a stop when given a visual or audible signal to stop ... by a uniformed officer in an appropriately marked police vehicle."

{23} The State's legal theory was clearly and simply that Defendant was attempting to evade police officers. Division of the offense based on the means of locomotion used during one chase episode is artificial and not required or contemplated by the statute. We conclude that the legislature has not clearly expressed an intention for multiple punishments for unitary conduct that violates several sub-sections of Section 30–22–1 and remand to the trial court with instructions to vacate Defendant's conviction and sentence for one count of resisting, evading, or obstructing an officer.

## C. Prosecutorial Misconduct

{24} Santa Fe police officers pursued the Defendant outside the Santa Fe city limits once they discovered Defendant was wanted on a fugitive warrant from Arizona. That information had been garnered soon after the pursuit began. As a result of a defense motion in limine the trial court ruled that the existence of the Arizona warrant was not to be revealed in the presence of the jury. Defendant complains that the prosecutor engaged in deliberate misconduct when a witness offered unsolicited testimony contrary to the trial judges ruling that the Defendant was the subject of an outstanding felony warrant from Arizona. The willful and deliberate injection of prior bad acts and

**138**

knowledge of the criminal justice system can amount to prosecutorial misconduct. *See State v. Ashley,* 1997–NMSC–049, ¶¶ 13–14, 124 N.M. 1, 946 P.2d 205. However, Defendant offers no direct evidence that the prosecutor deliberately flouted the court's order or otherwise failed to properly instruct the witness. There is no basis to conclude that the prosecutor's acts were willful or deliberate or sufficiently negligent to merit intervention by the trial court.

 {25} "Where there is a doubtful or deficient record, every presumption must be indulged by the reviewing court in favor of the correctness and regularity of the lower court's judgment." *In re Ernesto M., Jr.,* 1996–NMCA–039, ¶ 19, 121 N.M. 562, 915 P.2d 318. The trial court is in the best position to evaluate the significance of any alleged prosecutorial errors. *See State v. Duffy,* 1998–NMSC–014, ¶ 46, 126 N.M. 132, 967 P.2d 807. Absent an abuse of that discretion, the trial court's decision to deny the motion should be upheld. *See State v. Thurman,* 84 N.M. 5, 8, 498 P.2d 697, 700 (Ct.App. 1972). We affirm on this issue.

## III. CONCLUSION

{26} We reverse and remand on the speedy trial issue to require the trial court to evaluate whether the Defendant's right to a speedy trial has been violated using the *Barker v. Wingo* factors. We also remand to the trial court with instructions to vacate one conviction and sentence for one count of resisting, evading, or obstructing an officer. Finally, we affirm the trial court in concluding that the Defendant's due process rights have not been violated due to prosecutorial misconduct.

{27} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID, Judge, and M. CHRISTINA ARMIJO, Judge.