STATE V. BROWN

This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**DAVALOUS BROWN,**
**Defendant-Appellant.**

NO. A-1-CA-35598

COURT OF APPEALS OF NEW MEXICO

February 11, 2019

APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY, Fernando R. Macias, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Santa Fe, NM, John J. Woykovsky, Assistant Attorney General, Albuquerque, NM, for Appellee

Bennett J. Baur, Chief Public Defender, Tania Shahani, Assistant Appellate Defender, Santa Fe, NM, John Bennett, Assistant Appellate Defender, Albuquerque, NM, for Appellant

**JUDGES**

JENNIFER L. ATTREP, Judge. WE CONCUR: M. MONICA ZAMORA, Chief Judge, J. MILES HANISEE, Judge

**AUTHOR:** JENNIFER L. ATTREP

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}** Defendant Davalous Brown appeals his convictions for two counts of battery upon a peace officer, in violation of NMSA 1978, Section 30-22-24(A) (1971), and one count of resisting, evading or obstructing an officer, in violation of NMSA 1978, Section 30-22-1(B) (1981). Defendant raises the following issues on appeal: (1) double jeopardy violation as to his two convictions for battery upon a peace officer, (2) double jeopardy violation as to his convictions for resisting, evading or obstructing an officer and battery upon a peace officer, (3) jury instruction error as to one count of battery upon a peace officer, and (4) sufficiency of the evidence. We conclude that Defendant's two convictions for battery upon a peace officer violate the prohibition against double jeopardy. Accordingly, we remand to the district court to vacate Defendant's second conviction for battery upon a peace officer. Otherwise, we affirm.

## BACKGROUND

**{2}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we set forth only those facts that are necessary to decide the merits. As a result of a domestic dispute between Defendant and Xavia Gutierrez, the mother of Defendant's child, Ms. Gutierrez obtained a restraining order and a warrant was issued for Defendant's arrest. Ms. Gutierrez devised a plan with Deputy Chase Thouvenell of the Doña Ana County Sheriff's Office to have Defendant served with the warrant. Ms. Gutierrez then contacted Defendant and had him come to her home to shower. After Defendant entered the shower, Ms. Gutierrez texted Deputy Thouvenell to come serve the warrant. While Defendant was still in the shower, Deputy Thouvenell entered the bathroom; with his taser drawn, the deputy announced his presence, told Defendant to raise his hands, and stated that he had a warrant for Defendant's arrest. Defendant initially seemed compliant but then lunged at the deputy. Deputy Thouvenell attempted to deploy his taser but was unsuccessful. After knocking Deputy Thouvenell to the ground, Defendant jabbed and pressed on the deputy's left eye and at some point disarmed the deputy of his taser. Deputy Thouvenell "started kicking and throwing [his] hands up," at which point Defendant ran from the bathroom toward an exit of the house, with Deputy Thouvenell following close behind. Upon reaching the door, Defendant turned and pointed the taser at Deputy Thouvenell's face. Deputy Thouvenell drew his handgun; Defendant then shoved the deputy, pushing him over some furniture. As Deputy Thouvenell got up, Defendant ran out the door naked, still holding the taser. Deputy Thouvenell pursued Defendant outside and shot at Defendant. Defendant then engaged in a protracted two-hour resistance in which he hid under a nearby mobile home, was shot at again several times and hit by one bullet, made his way back to Ms. Gutierrez's home, and then barricaded himself inside. Defendant was finally extracted through the use of tear gas, a police dog, and a SWAT team.

**{3}** Defendant was charged with aggravated battery upon a peace officer, which was amended down to battery upon a peace officer (Count 1), disarming a police officer (Count 2), aggravated assault upon a peace officer (Count 3), battery upon a peace officer (Count 4), resisting, evading or obstructing an officer (Count 5), and causing injury to a police dog (Count 6). The jury found Defendant guilty of both counts of

battery upon a peace officer (Counts 1 and 4) and of resisting, evading or obstructing an officer (Count 5); Defendant was acquitted of all other charges.

## DISCUSSION

### I. Double Jeopardy

**{4}** "The Double Jeopardy Clause of the Fifth Amendment, enforced against the states by the Fourteenth Amendment, protects defendants from receiving multiple punishments for the same offense." *State v. Ramirez*, 2018-NMSC-003, ¶ 38, 409 P.3d 902 (internal quotation marks and citation omitted). Multiple punishment problems arise in both unit-of-prosecution claims, "in which an individual is convicted of multiple violations of the same criminal statute[,]" and double-description claims, "in which a single act results in multiple charges under different criminal statutes[.]" *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. In this case, Defendant raises both unit-of-prosecution and double-description challenges to his convictions. "A double jeopardy claim is a question of law that we review de novo." *Id.* ¶ 6.

### A. Unit-of-Prosecution Challenge

**{5}** Defendant first raises a unit-of-prosecution challenge as to his two convictions for battery upon a peace officer (Counts 1 and 4). "The relevant inquiry in unit-of-prosecution cases is whether the Legislature intended punishment for the entire course of conduct or for each discrete act." *State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 40, 136 N.M. 309, 98 P.3d 699 (alterations, internal quotation marks, and citation omitted). "The unit-of-prosecution analysis is done in two steps." *Bernal*, 2006-NMSC-050, ¶ 14. "First, we review the statutory language for guidance on the unit of prosecution." *Id.* "If the language is not clear, then we move to the second step, in which we determine whether a defendant's acts are separated by sufficient 'indicia of distinctness' to justify multiple punishments under the same statute." *Id.* "Finally, if we have not found a clear indication of legislative intent, we apply the 'rule of lenity,' a presumption against imposing multiple punishments for acts that are not sufficiently distinct." *State v. DeGraff*, 2006-NMSC-011, ¶ 32, 139 N.M. 211, 131 P.3d 61.

**{6}** In this case, Defendant baldly asserts that Section 30-22-24 (battery upon a peace officer) does not clearly set out the unit of prosecution; the State suggests the unit of prosecution may properly be measured by the number of officers involved, but then proceeds to the second step of the analysis. As such, neither party argues that the relevant criminal statute is dispositive of the unit of prosecution nor presents developed arguments on the matter. Thus, we proceed to the second step of the unit-of-prosecution analysis. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (stating that appellate courts will not address arguments where parties failed to develop them "with any principled analysis"); *State v. Demongey*, 2008-NMCA-066, ¶ 10, 144 N.M. 333, 187 P.3d 679 (proceeding to second step of the unit-of-prosecution analysis where "neither party argues that the unit of prosecution is clearly defined in the relevant criminal statutes").

**{7}** To determine whether Defendant's acts are sufficiently distinct to support multiple convictions, we look to factors adopted by our Supreme Court in *Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624. In particular, we examine the "(1) temporal proximity of the acts; (2) location of the victim during each act; (3) existence of an intervening act; (4) sequencing of the acts; (5) the defendant's intent as evidenced by his conduct and utterances; and (6) the number of victims." *State v. Garcia*, 2009-NMCA-107, ¶ 10, 147 N.M. 150, 217 P.3d 1048 (citing *Herron*, 1991-NMSC-012, ¶ 15).

**{8}** Defendant's two convictions for battery upon a peace officer arise from his attempt to gouge Deputy Thouvenell's eye in the bathroom (Count 1) and his conduct in pushing Deputy Thouvenell over the furniture prior to fleeing the home (Count 4). Defendant argues that these two convictions violate his right to be free from double jeopardy because they both "arose out of the same course of conduct with a single mens rea, necessitating one punishment for the single act." The State argues instead that Defendant's "acts of battery were distinguishable and separated by an intervening event when [Deputy] Thouvenell fought back after the initial attack, and [Defendant] then got up and ran." We disagree with the State. Under the particular facts of this case and our existing precedent, Defendant's acts lacked sufficient indicia of distinctness to justify multiple convictions for battery upon a peace officer.

**{9}** The record on appeal indicates that the acts of battery occurred close in time and place, with one victim. Defendant jabbed and pressed on Deputy Thouvenell's eye in the bathroom and, after a brief scuffle, immediately ran for an exit, with the deputy following right behind. Prior to fleeing the home, Defendant, taser in hand, turned to face Deputy Thouvenell and then pushed the deputy over some furniture. While we cannot discern the exact time or distance separating the batteries, Defendant's actions within the home appear from the record to have occurred in rapid succession and were all part of one continuous effort by Defendant to get away from Deputy Thouvenell. *See State v. Mares*, 1991-NMCA-052, ¶ 26, 112 N.M. 193, 812 P.2d 1341 (noting the lack of detail in the record and determining that, even where the defendant repeatedly attacked the victim in a car, on the ground, and in a nearby bush, the defendant's actions were "one violent rampage" and, thus, he committed only one battery); *see also Demongey*, 2008-NMCA-066, ¶ 15 ("While there was a time elapse between shots of up to two minutes, as well as a distance traveled of up to two miles, we cannot conclude that there were multiple, distinct acts in this case."). And in the absence of detail in the record "indicat[ing] the time between criminal acts, mere speculation [is] not sufficient to support a verdict of multiple batteries." *State v. Handa*, 1995-NMCA-042, ¶ 25, 120 N.M. 38, 897 P.2d 225.

**{10}** The State argues that there was an intervening act—the scuffle in the bathroom followed by Defendant's run toward the exit—sufficient to justify multiple punishments. The State relies on *State v. Cooper*, 1997-NMSC-058, 124 N.M. 277, 949 P.2d 660, a double-description case in which the defendant's convictions for aggravated battery and second degree murder were upheld in the face of a double jeopardy challenge. In *Cooper*, the evidence supported the determination that the initial battery was fully completed by the time the events leading to the victim's murder were committed. *See id.*

¶ 61. In double-description cases, it is well settled that conduct is not unitary and multiple punishments are authorized when there is "an identifiable point at which one of the charged crimes ha[s] been completed and the other not yet committed." *DeGraff*, 2006-NMSC-011, ¶ 27 (citing, among other authorities, *Cooper*, 1997-NMSC-058, ¶ 59); *see also State v. Melendrez*, 2014-NMCA-062, ¶ 10, 326 P.3d 1126 ("[W]hen there is an identifiable point between the completion of one crime and the beginning of the other, conduct is not unitary and multiple punishments are authorized."). The same does not necessarily hold true in unit-of-prosecution cases. As recognized in *Herron*, the fact that one instance of the crime is technically "complete" does not mandate that each instance is a "new and separate offense." 1991-NMSC-012, ¶ 12. Accordingly, we do not find *Cooper* persuasive in this case.

**{11}** Given the fact-intensive nature of our unit-of-prosecution analysis, we find our decision in *Demongey* to be dispositive here. Like the case at bar, *Demongey* involved a fleeing defendant who engaged in multiple acts of force (firing a gun) toward the pursuing officer, with some intervening time and space between the acts. *See* 2008-NMCA-066, ¶¶ 3-4. Notwithstanding that the shots were separated by minutes and miles, our Court in *Demongey* found that "[t]he nature of the conduct was one desperate attempt at fleeing and killing the officer in the process." *Id.* ¶ 16. This Court did not consider the defendant's intervening flight significant and held "that there was one unitary course of conduct for the three acts of shooting[.]" *Id.* Here, the separation of Defendant's acts of force toward the deputy was very slight compared to *Demongey*. Given this precedent, we are not persuaded that intervening acts identified by the State "can be considered a significant separating event[.]" *Garcia*, 2009-NMCA-107, ¶ 15 (finding no sufficient intervening event when the fight between the defendant and victim was interrupted by an unknown force knocking victim to the ground); *see also Mares*, 1991-NMCA-052, ¶ 26 (noting that, although the arrival of a vehicle apparently intervened to stop the defendant's beating of the victim, the record lacked detail to determine "whether [the intervention] was but for a moment, or for an extended period of time").

**{12}** Furthermore, the record indicates that Defendant's intent never changed throughout the episode. Rather, it appears that Defendant was singularly focused on escaping Deputy Thouvenell and avoiding arrest. *See Handa*, 1995-NMCA-042, ¶ 24 (concluding that the defendant's act of pointing a weapon at an officer and shooting three times was "pursuant to a single, continuous intent to execute a single, overall objective: to kill [the officer]"); *Mares*, 1991-NMCA-052, ¶ 26 ("[T]he record [did] not prove that the intent behind the attack changed during the course of the attack."). The only factor arguably weighing in favor of distinct conduct is the different means used to batter Deputy Thouvenell—eye jabbing versus shoving. We have, however, previously held that different means or methods used by a defendant alone "is not sufficient for this [C]ourt to conclude that the offensive contacts were separate acts." *Mares*, 1991-NMCA-052, ¶ 27; *cf. State v. LeFebre*, 2001-NMCA-009, ¶¶ 17-23, 130 N.M. 130, 19 P.3d 825 (holding, in double-description case, that where a defendant attempted to escape officers in his car and then on foot, the defendant's conduct was unitary because it all constituted one attempt to get away).

**{13}** Based on the record before us, Defendant's acts were close in time and proximity, occurred with a single intent as part of a continuous attempt to flee the officer, and were committed against one victim. Given this, and bearing in mind the rule of lenity, we hold that Defendant's convictions for two counts of battery upon a peace officer violate double jeopardy. *See Bernal*, 2006-NMSC-050, ¶ 14 ("If the acts are not sufficiently distinct, then the rule of lenity mandates an interpretation that the [L]egislature did not intend multiple punishments, and a defendant cannot be punished for multiple crimes."). Accordingly, we vacate Defendant's second conviction for battery upon a peace officer (Count 4).[1] *Cf. State v. Tidey*, 2018-NMCA-014, ¶ 17, 409 P.3d 1019 (vacating, on unit-of-prosecution double jeopardy grounds, drug paraphernalia count associated with baggies while upholding drug paraphernalia count associated with burnt straw).

## B.    Double-Description Challenge

**{14}** Defendant next raises a double-description challenge, arguing that his convictions for resisting, evading or obstructing a peace officer and battery upon a peace officer violate his right to be free from double jeopardy. In analyzing double-description challenges, we employ the two-part test set out in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223, in which we examine: (1) whether the conduct is unitary, and, if so, (2) whether the Legislature intended to punish the offenses separately. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.*

**{15}** There is ample evidence in the record of Defendant's flight and evasion separate and apart from any conduct giving rise to the battery upon a peace officer convictions. But we need not undertake a unitary conduct analysis here because Defendant "cannot carry the burden imposed by the second prong of the *Swafford* test." *Ramirez*, 2018-NMSC-003, ¶ 42; *see also State v. Bahney*, 2012-NMCA-039, ¶ 21, 274 P.3d 134 (stating that it is permissible to presume unitary conduct because "our case law separately makes it clear that analysis pursuant to either prong can be dispositive of a *Swafford*-governed double jeopardy challenge").

**{16}** "The sole limitation on multiple punishments is legislative intent[.]" *State v. Franco*, 2005-NMSC-013, ¶ 12, 137 N.M. 447, 112 P.3d 1104 (alterations, internal quotation marks, and citation omitted). In assessing legislative intent, our Supreme Court has directed that "we first look to the language of the statute itself. If the statute does not clearly prescribe multiple punishments, then the rule of statutory construction established in *Blockburger v. United States*, 284 U.S. 299 . . . (1932), applies." *State v. Swick*, 2012-NMSC-018, ¶ 11, 279 P.3d 747 (citation omitted). "Under *Blockburger*, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Swick*, 2012-NMSC-018, ¶ 12 (internal quotation marks and citation omitted). "If each statute requires proof of a fact that the other does not, it may be inferred that the Legislature intended to authorize separate punishments under each statute." *Id.* ¶ 13. That inference or

"presumption, however, is not conclusive and it may be overcome by other indicia of legislative intent." *Swafford*, 1991-NMSC-043, ¶ 31.

**{17}**    Looking first to the language of the resisting, evading or obstructing an officer statute (Section 30-22-1) and the battery upon a peace officer statute (Section 30-22-24), neither clearly prescribes multiple punishments. *See Swick*, 2012-NMSC-018, ¶ 11. As such, we apply the *Blockburger* test to the applicable statutes and conclude that each requires proof of a fact that the other does not. Defendant was charged, and the jury was instructed, under a specific subsection of the resisting, evading or obstructing an officer statute, *see* § 30-22-1(B), and so we examine this subsection as part of our *Blockburger* analysis. *See State v. Gutierrez*, 2011-NMSC-024, ¶ 58, 150 N.M. 232, 258 P.3d 1024 ("[W]e treat statutes written in the alternative as separate statutes for purposes of the *Blockburger* analysis." (internal quotation marks and citation omitted)).

**{18}**    Section 30-22-1(B) requires "intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him[.]" In contrast, battery upon a peace officer is "the unlawful, intentional touching or application of force to the person of a peace officer while he is in the lawful discharge of his duties, when done in a rude, insolent or angry manner." Section 30-22-24(A). Battery upon a peace officer requires proof that Defendant touched or applied force to an officer, which is not required to prove resisting, evading or obstructing an officer under Section 30-22-1(B). Likewise, Section 30-22-1(B) requires proof that Defendant (1) fled, attempted to evade, or evaded an officer (2) with knowledge that the officer was attempting to apprehend or arrest Defendant, neither of which is required to prove battery upon a peace officer. Therefore, one offense is not subsumed within the other, and *Blockburger* gives rise to a presumption that the Legislature intended the offenses to be separately punished. *See Swafford*, 1991-NMSC-043, ¶ 31.

**{19}**    "When two statutes survive *Blockburger*, we look to the language, history, and subject of the statutes, and we must identify the particular evil sought to be addressed by each offense." *State v. Branch*, 2018-NMCA-031, ¶ 30, 417 P.3d 1141 (internal quotation marks and citation omitted). "Statutes directed toward protecting different social norms and achieving different policies can be viewed as separate and amenable to multiple punishments." *Swafford*, 1991-NMSC-043, ¶ 32. "[T]he social evils proscribed by different statutes must be construed narrowly[.]" *Id.* Here, the relevant statutes protect against different societal harms. One of the purposes of Section 30-22-1(B), which prohibits the "intentionally fleeing, attempting to evade or evading an officer," is to protect the general public from harm that may result from a fleeing suspect. *Cf. State v. Padilla*, 2008-NMSC-006, ¶ 21, 143 N.M. 310, 176 P.3d 299 (concluding that the purpose of the aggravated fleeing statute, NMSA 1978, Section 30-22-1.1 (2003), is to protect the general public from the dangers of a high speed chase); *State v. Padilla*, 2006-NMCA-107, ¶¶ 34-35, 140 N.M. 333, 142 P.3d 921 (determining that Section 30-22-1.1 and Section 30-22-1(B) are "kindred" crimes and that Section 30-22-1(B) is an included offense of Section 30-22-1.1), *rev'd on other grounds*, 2008-NMSC-006. Conversely, the purpose of Section 30-22-24(A) "is to protect the safety and

authority of peace officers." *State v. Padilla*, 1997-NMSC-022, ¶ 5, 123 N.M. 216, 937 P.2d 492 (emphasis omitted).

**{20}** Additionally, we consider whether the offenses are usually committed together. *See Swafford*, 1991-NMSC-043, ¶ 33. There are myriad scenarios in which a defendant could resist, evade or obstruct an officer without committing battery on that officer and the converse is true as well—the two statutes are not necessarily violated together. Therefore, we conclude that the *Blockburger* presumption is not overcome. Defendant's convictions for battery upon a peace officer (Count 1) and resisting, evading or obstructing an officer (Count 5) do not violate his right to be free from double jeopardy.

## II. Sufficiency of the Evidence

**{21}** In making his sufficiency challenge, Defendant first contends that because the jury acquitted him of disarming a police officer and the facts supporting battery upon a peace officer (Count 1) happened "simultaneously," the jury should also have acquitted him of the battery. It, however, is well established that a reviewing court will not entertain an argument, such as this, that criminal verdicts are inconsistent with one another. *See State v. Roper*, 2001-NMCA-093, ¶ 24, 131 N.M. 189, 34 P.3d 133 ("We have frequently said that our business is to review the verdicts of conviction, and not concern ourselves with any alleged acquittals, and thus we do not entertain contentions alleging that the verdicts are irreconcilable."); *State v. Leyba*, 1969-NMCA-030, ¶ 37, 80 N.M. 190, 453 P.2d 211 (holding that an acquittal that is "irreconcilable" with a conviction "does not require the conviction to be set aside as a matter of law"). With respect to Defendant's remaining convictions, he baldly asserts that they were not based on sufficient evidence. This is insufficient to raise a colorable sufficiency challenge. *See* Rule 12-318(A)(4) NMRA ("A contention that a verdict, judgment, or finding of fact is not supported by substantial evidence shall be deemed waived unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence[.]").

## CONCLUSION

**{22}** We conclude that Defendant's two convictions for battery upon a peace officer violate the prohibition against double jeopardy. We therefore remand to the district court to vacate Defendant's conviction for battery upon a peace officer in Count 4 and to resentence Defendant accordingly. Having concluded Defendant's remaining claims of error are without merit, we otherwise affirm.

**{23}   IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**J. MILES HANISEE, Judge**

---

1 Because we vacate Defendant's conviction for the second count of battery upon a peace officer (Count 4), we need not address the jury instruction error raised by Defendant as to this count.