2008-NMCA-111

191 P.3d 563

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Oscar Cruz LOPEZ, Defendant– Appellant.**

**No. 27,143.**

Court of Appeals of New Mexico.

June 5, 2008.

Certiorari Denied, No. 31,183, July 18, 2008.

Gary K. King, Attorney General, Santa Fe, NM, M. Anne Kelly, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} Defendant appeals his convictions for battery on a peace officer and resisting an officer. Both convictions arise out of a protracted car and foot chase in which Defendant punched the officer in the face twice. Defendant contends that he may be convicted only of battery on a peace officer and that his conviction for resisting an officer violates double jeopardy. Defendant also contends that the evidence is insufficient to support his convictions. We hold that Defendant's conduct was not unitary and reject his double jeopardy claim. We also reject his claim that the evidence is insufficient.

## BACKGROUND

{2} Officer Roberto Gutierrez of the Las Cruces Police Department testified that on August 14, 2005, he saw a brown truck traveling 80 to 90 miles per hour in a 30–mile–per–hour zone. He turned on his lights and siren and pursued the truck for about a mile until it pulled into an apartment complex and stopped. He parked behind the truck. Defendant got out of the truck, and the officer told him to get back into the truck. Defendant ran away. The officer began chasing him on foot through the complex. Defendant lost his footing and fell on his hands. The officer instructed him to get on the ground, but Defendant caught himself and ran away. Defendant jumped over a rock wall with a four- to five-foot drop and landed face first on the pavement. The officer again instructed him to stay there, but Defendant attempted to get up and run away again. Defendant continued to run and the officer pursued him instructing him to stop. The officer drew his taser and tasered Defendant, but it did not affect him. The officer tasered Defendant again, and this time it did slow Defendant down.

{3} Defendant turned to face the officer, "taking a defensive attack posture," meaning he blew his chest up, clenched his fists, and began walking toward the officer. Defendant then punched him twice in the face while wearing a horseshoe shaped ring, drawing blood. The officer dry tasered Defendant, which means that because the cartridge on his taser was empty, he used the residual electricity to control Defendant by driving it into his skin. The officer then attempted to physically maneuver Defendant to the ground, and they wound up wrestling on the ground.

{4} Defendant broke free, began running again, and at some point stopped, turned, and faced the officer a second time in an aggressive manner. Defendant walked toward the officer in a "very fast" and "hasty" manner. The officer drew his baton and held it in a show of force, struck Defendant on the leg, and yelled at him to get on the ground. Defendant again ran away. Defendant then faced the officer a third time. The officer attempted an "arm bar takedown," which led to the two men wrestling and Defendant attempting to hit the officer. Once again, Defendant ran away.

{5} Defendant tripped on a concrete walkway as he ran. Eventually, the officer caught up with him and struck him on the leg with his baton, ordering him to get on the ground. Defendant grabbed onto a five- or six-foot chain link fence as the officer continually struck him on the lower back and legs. Other officers arrived and one of them tasered Defendant as he ran away. It took five or six officers to eventually take him into custody.

{6} Defendant admitted running away from the officer because he had an active arrest warrant for failure to pay fines, but disputed other facts. He denied jumping walls and fences and denied punching the officer or wrestling with him. Defendant claimed that the blood on the officer was Defendant's own blood, not the officer's.

{7} With these facts in mind we turn to the analysis in this case.

## DISCUSSION

### Double Jeopardy

{8} We generally apply a de novo standard of review to the constitutional question of whether there has been a double jeopardy violation. *State v. Andazola*, 2003–NMCA–146, ¶ 14, 134 N.M. 710, 82 P.3d 77. There are two types of double jeopardy cases involving potential multiple punishment: (1) when a defendant is charged with multiple violations of the same statute based on a single course of conduct, referred to as "unit of prosecution" cases, and (2) when a defendant is charged with violations of multiple statutes for the same conduct, referred to as "double description" cases. *State v. DeGraff*, 2006–NMSC–011, ¶ 25, 139 N.M. 211, 131 P.3d 61. This is a double description case.

{9} In a double description case, we first ask whether the conduct underlying the offenses is unitary. *State v. LeFebre*, 2001–NMCA–009, ¶ 16, 130 N.M. 130, 19 P.3d 825. If it is, then we ask whether the legislature intended to impose multiple punishment for the unitary conduct. *Id.* To determine whether conduct is unitary, we consider whether the defendant's acts are separated by sufficient "indicia of distinctness." *Swafford v. State*, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991). Indicia of distinctness are pres-

ent when "two events are sufficiently separated by either time or space (in the sense of physical distance between the places where the acts occurred)." *Id.* at 13–14, 810 P.2d at 1233–34. "Conduct is unitary if it is not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished." *LeFebre*, 2001–NMCA–009, ¶ 17, 130 N.M. 130, 19 P.3d 825. If time and space considerations are not determinative, "resort must be had to the quality and nature of the acts or to the objects and results involved." *Id.; see State v. Barrera*, 2001–NMSC–014, ¶ 36, 130 N.M. 227, 22 P.3d 1177 (stating that "[d]istinctness may also be established by the existence of an intervening event, the defendant's intent as evinced by his or her conduct and utterances, the number of victims, and the behavior of the defendant between acts" (internal quotation marks and citation omitted)). Movement or relocation of a victim tends to establish that acts involved in a continuous criminal episode are separate and distinct. *See Herron v. State*, 111 N.M. 357, 361–62, 805 P.2d 624, 628–29 (1991).

{10} Applying these factors, we conclude that Defendant's conduct was not unitary. The facts indicate that Defendant's act of fleeing was punctuated by a distinct change in character and quality when he stopped fleeing, turned toward the officer in an attack posture, came back to the officer, and punched him twice in the face, drawing blood. We recognize that the Double Jeopardy Clause is not fragile, and it cannot be avoided by the simple expedient of dividing conduct into a series of temporal and spatial units. *State v. Frazier*, 2007–NMSC–032, ¶ 23, 142 N.M. 120, 164 P.3d 1; *see LeFebre*, 2001–NMCA–009, ¶¶ 17–18, 130 N.M. 130, 19 P.3d 825 (holding that where a defendant attempted to escape officers in his car and then on foot, the defendant's conduct was unitary because it all constituted an attempt to get away). However, in this case, we conclude that Defendant's conduct in returning to the officer and punching him in the face constituted a change from his act of fleeing sufficient to determine that the two offenses were not unitary. Additionally, at the time Defendant stopped fleeing and physically attacked the officer, Defendant's

purpose changed from simply trying to escape into physical violence directed at the officer. These facts support our conclusion that "the quality and nature of the individual acts," and "the objectives and results" involved, changed significantly and support our conclusion that the battery on the officer and the protracted chase were not unitary. *See Barrera*, 2001–NMSC–014, ¶ 36, 130 N.M. 227, 22 P.3d 1177 (noting that change in behavior and intent can support separate crimes); *State v. Stewart*, 2005–NMCA–126, ¶ 25, 138 N.M. 500, 122 P.3d 1269 (holding that, where the evidence demonstrated that punching a child in the chest was sufficiently distinct from another act of violence toward the child, the punch and the other acts of violence were distinct acts); *cf. State v. Contreras*, 2007–NMCA–045, ¶¶ 22–23, 141 N.M. 434, 156 P.3d 725 (holding that where the defendant separated cocaine, sold some to the undercover officer, and retained some for himself, the defendant's conduct was not unitary and supported convictions for selling cocaine and for possession of cocaine), *cert. quashed*, 2007–NMCERT–011, 143 N.M. 157, 173 P.3d 764. Consequently, separate punishments for battery on a peace officer and resisting an officer under the circumstances of this case do not violate double jeopardy. *See Frazier*, 2007–NMSC–032, ¶ 18, 142 N.M. 120, 164 P.3d 1 (holding that if conduct is not unitary, then a defendant may be convicted of multiple crimes); *Stewart*, 2005–NMCA–126, ¶ 23, 138 N.M. 500, 122 P.3d 1269 (stating that if the conduct is separate and distinct, the inquiry is at an end).

{11} Defendant relies on *State v. Ford*, 2007–NMCA–052, ¶¶ 12–23, 141 N.M. 512, 157 P.3d 77, in which we held that where a defendant chest-butted and kicked an officer in the leg while being arrested and handcuffed, he could only be convicted of battery on an officer. We hold that *Ford* is distinguishable. There, we considered the acts of resistance and battery to be "similar." *Id.* ¶ 14. In *Ford*, we also considered that little time elapsed between events. *See id.* (quoting testimony that " '[e]verything happened so fast' ").

{12} Here, in contrast, we do not consider Defendant's acts of resistance and battery to be similar. Kicking an officer in the leg while being arrested and handcuffed, as oc-

curred in *Ford*, is significantly different in quality and nature from what we have here: Defendant engaged in protracted fleeing and then stopped, changed course, physically confronted the officer, and attacked the officer by punching him twice in the face. Moreover, while the contact in *Ford* can arguably be characterized as incidental contact during an arrest and part of the struggle that constituted the resisting of that arrest, the conduct here cannot be similarly characterized. In our view, Defendant's conduct in returning to strike the officer in the face is significantly different from Defendant's resistance, and therefore Defendant's conduct is not unitary. Further, the protracted nature of Defendant's resistance also distinguishes this case from *Ford*.

{13} For all of these reasons, we conclude that Defendant's conduct was not unitary. Because we hold that Defendant's acts did not constitute unitary conduct, we need not address the legislature's intent. *See Frazier*, 2007–NMSC–032, ¶ 18, 142 N.M. 120, 164 P.3d 1 (holding that if conduct is not unitary, then a defendant may be convicted of multiple crimes); *Stewart*, 2005–NMCA–126, ¶ 23, 138 N.M. 500, 122 P.3d 1269 (stating that if the conduct is separate and distinct, the inquiry is at an end). Accordingly, we hold that, on these facts, double jeopardy is not violated by convictions for battery on a peace officer and for resisting an officer.

**Sufficiency of Evidence**

{14} Defendant contends there is insufficient evidence to support his conviction for battery on a peace officer. A review for sufficiency of the evidence involves a two-step process. Initially, the evidence is viewed in the light most favorable to the verdict. Then the appellate court must make a legal determination of "whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994) (internal quotation marks and citation omitted).

{15} The evidence we have discussed adequately supports a conclusion that Defendant knowingly battered a police officer. Defendant relies on his own testimony that he did

not strike the officer, on his unsupported conclusion that if he had struck the officer, the ring Defendant was wearing would have inflicted far more damage, and on his assertion that blood on the officer's face was Defendant's blood, not the officer's. The jury was free to reject Defendant's testimony, *see State v. Rojo*, 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829, particularly in light of the evidence that the injury to the officer's face was in the shape of Defendant's ring.

**CONCLUSION**

{16} For all of these reasons, we hold that double jeopardy was not violated and that the evidence is sufficient to support Defendant's convictions. We affirm.

{17} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge and RODERICK T. KENNEDY, Judge.