This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                          **NO. 28,854**

**JACOB ROMERO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**J. Michael Kavanaugh, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Santa Fe, NM
Josephine H. Ford, Assistant Public Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

Defendant Jacob Romero appeals his conviction for two counts of evading arrest in violation of Subsections (B) and (D) of NMSA 1978, Section 30-22-1 (1981). Defendant argues on appeal that convicting him for two counts of violating Section 30-22-1 punishes him twice for the same conduct, in violation of his double jeopardy rights pursuant to the Fifth Amendment to the United States Constitution. We affirm.

**BACKGROUND**

On November 7, 2006, Officer Mel Acata observed Defendant driving erratically in the area of Yale and Central Avenues in Albuquerque, New Mexico. Officer Acata followed Defendant's car as it pulled onto Yale. While Officer Acata was following Defendant, Defendant's car turned left into a parking lot and crashed into a wall to the south of the parking lot.

Officer Acata stopped his car about seven to ten feet away from Defendant's car and called for backup. Officer Acata then approached Defendant's car on foot with his gun out and asked Defendant to show him his hands. Defendant was cursing and appeared to be looking around for a way to escape. Officer Acata ordered Defendant out of the car, and Defendant immediately walked toward the officer. Officer Acata ordered Defendant to turn around and get on his knees, and Defendant complied. Officer Acata then grabbed Defendant's arms and was about to handcuff Defendant when Defendant threw an elbow that struck Officer Acata in his right eye.

The two men then engaged in a brief struggle, which ended when Defendant pushed Officer Acata to the ground and fled the scene on foot. Officer Acata pursued Defendant for about a block, but Defendant escaped when he jumped over a wall.

Additional officers arrived at the scene shortly thereafter and began a search for Defendant. After approximately forty-five minutes, other officers located Defendant hiding behind a bush next to a nearby building. Defendant was unwilling to leave at the officers' requests and only entrenched himself further when Officer Andrew Vocasek used pepper spray on him. Officers were finally able to arrest Defendant when Officer Vocasek used his taser on Defendant.

Defendant was arrested and charged with several offenses in connection with the incident, including three violations of Section 30-22-1. Before Defendant's trial, Defendant moved to dismiss two of the counts, along with a count of refusing to obey an officer in violation of a city ordinance, on the grounds that Defendant was being charged four times for what amounted to one episode of flight in violation of his right against double jeopardy. In response to Defendant's motion, the State moved to voluntarily dismiss one of the counts for resisting under Section 30-22-1. The metropolitan court dismissed the charge of refusing to obey after the State had rested. Defendant was convicted of the two remaining charges; one charge each for violating Subsection (B), which punishes "intentionally fleeing . . . an officer [with] knowledge

3

that the officer is attempting to apprehend or arrest him," and Subsection (D), which punishes "resisting or abusing any . . . peace officer in the lawful discharge of his duties." The jury acquitted Defendant of the charge of battery, which the State claimed to have occurred when Defendant struck Officer Acata's eye with his elbow during the initial struggle to escape being arrested. Defendant renewed his double jeopardy arguments in an appeal to the district court. The district court affirmed Defendant's convictions under each subsection, reasoning that the conduct in this case was not unitary, such that separate punishments for physical resistance and fleeing the scene did not violate Defendant's rights against double jeopardy.

**DOUBLE JEOPARDY**

Defendant argues that his constitutional rights were violated when he was convicted of violating both Subsections (B) and (D) of Section 30-22-1. Defendant argues that his conduct was unitary, such that the acts of elbowing and struggling with Officer Acata and fleeing the scene on foot and hiding for forty-five minutes should be treated as a single act for double jeopardy purposes. Defendant further argues that the State violated his double jeopardy rights by prosecuting him under both subsections because the Legislature clearly intended that conduct such as his be prosecuted as only a single violation of Section 30-22-1.

We review de novo the constitutional question of whether Defendant's right

against double jeopardy has been violated. *State v. Lopez*, 2008-NMCA-111, ¶ 8, 144 N.M. 705, 191 P.3d 563, *cert. denied*, 2008-NMCERT-007, 144 N.M. 594, 189 P.3d 1216; *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77.  When a defendant is charged with violations of multiple statutes for the same conduct, we refer to that as a double description case.  *State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61.  "In a double description case, we first ask whether the conduct underlying the offenses is unitary."  *Lopez*, 2008-NMCA-111, ¶ 9; *State v. LeFebre*, 2001-NMCA-009, ¶ 16, 130 N.M. 130, 19 P.3d 825.  "If the conduct is non-unitary, multiple punishments do not violate the Double Jeopardy Clause, and our examination ends."  *State v. Ford*, 2007-NMCA-052, ¶ 10, 141 N.M. 512, 157 P.3d 77.  If the conduct can reasonably be said to be unitary, we then address whether the Legislature intended multiple punishments.  *Id.*  "To determine whether conduct is unitary, we consider whether the defendant's acts are separated by sufficient indicia of distinctness."  *Lopez*, 2008-NMCA-111, ¶ 9 (internal quotation marks and citation omitted).  "Conduct is unitary if it is not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished."  *Id.* (internal quotation marks and citation omitted).

In this case, we must consider whether Defendant's actions in elbowing Officer Acata and fleeing the scene were unitary in nature.  We agree with Defendant that

these acts occurred in a roughly contemporaneous manner. Defendant elbowed Officer Acata, the two struggled briefly, and Defendant immediately fled the scene. Thus, Defendant's actions pass the first aspect of our test for unitary conduct because the separation in time and space between the actions is not so great, in and of itself, as to warrant a conclusion that Defendant's conduct was not unitary. This temporal closeness, however, does not end our analysis of Defendant's actions. We still must consider whether the "object and result or quality and nature of the acts" can be distinguished. *Id.* In our analysis, we must consider whether "the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *Swafford v. State*, 112 N.M. 3, 14, 810 P.2d 1223, 1234 (1991).

In order to prove that Defendant violated Subsection (D), the State had to prove that Officer Acata was a peace officer and that Defendant resisted or abused Officer Acata in the lawful discharge of his duties. The jury could reasonably have found that this crime was complete the moment Defendant struck Officer Acata with his elbow, even if Defendant had immediately stopped resisting and complied with Officer Acata's further requests. In order to prove a violation of Subsection (B), the State had to prove that Defendant knew that Officer Acata was a peace officer and that he intentionally fled the scene in order to evade capture. The jury could reasonably infer

6

that this crime both started and completed when Defendant ran away from Officer Acata. The fact that the earlier resistance may have been in service to the act of fleeing is not persuasive because the jury could have reasonably evaluated the facts surrounding Defendant's actions and concluded that two separate offenses were committed on these facts. Because the quality and nature of Defendant's actions can be distinguished, his actions were not unitary. Therefore, Defendant's rights against double jeopardy were not violated by his convictions under the two different subsections of Section 30-22-1.

Defendant argues that the facts of this case are similar to those of *Ford* and *LeFebre*, cases in which this Court has found double jeopardy violations in double-description prosecutions. However, we do not consider either case controlling of our ruling. In *Ford*, the defendant struggled to get free from arresting officers and kicked one of those officers in the shin. *Ford*, 2007-NMCA-052, ¶ 13. The defendant was convicted of violating Section 30-22-1(D) and NMSA 1978, Section 30-22-24 (1971) (battery upon a peace officer). *Ford*, 2007-NMCA-052, ¶ 18. This Court held that "[t]he acts were similar" because both convictions were based on the defendant's acts of physical resistance to the arresting officers and that the state was attempting to prosecute the defendant multiple times for the same course of unitary conduct. *Id.* ¶¶ 13-14. In the present case, Defendant's resisting and abusing Officer Acata by

elbowing him is an act of physical resistance that is not similar in "quality and nature" to his act of escaping custody by fleeing on foot. As explained above, although the acts were not greatly separated by time and place, each of Defendant's actions was distinct, and thus the acts were not unitary. *See LeFebre*, 2001-NMCA-009, ¶ 17 ("Time and space considerations . . . cannot resolve every case and resort must be had to the quality and nature of the acts or to the objects and results involved.").

*LeFebre* involved a defendant who had led police on a high-speed car chase and subsequently continued to flee on foot. *Id.* ¶ 2. This Court held that the defendant's actions constituted a single act of fleeing officers and that the change from fleeing by car to fleeing on foot did not constitute an intervening event that would have allowed the defendant's flight to be considered non-unitary. *Id.* ¶ 18. In the present case, Defendant both resisted Officer Acata and fled the scene. Again, physical resistance and flight are actions that are distinct in their "quality and nature," such that changing from physically assaulting an officer to fleeing on foot creates a distinction in Defendant's actions that was missing in those of the defendant in *LeFebre*. Because the facts of *Ford* and *LeFebre* are unlike those of the present case, those cases do not persuade us that we should find Defendant's actions to be unitary in nature.

The dissent asserts that Defendant's act of elbowing Officer Acata was the first step in his act of fleeing. However, as we have stated, because each act of Defendant

8

could stand on its own to satisfy the requirements of one of the charges and because of the distinct nature of Defendant's actions, we are not persuaded that Defendant's actions should be considered unitary.

Although our conclusion that Defendant's conduct was not unitary is, by itself, conclusive on the double jeopardy issue, we address the second step of the *Swafford* test because of the dissent's analysis. Even if the conduct were unitary, as the dissent concludes, the charges would not violate the Double Jeopardy Clause because the Legislature intended multiple punishments for conduct such as that of Defendant. In the *Swafford* analysis, if we determine that conduct is unitary, we must then determine "whether the [L]egislature intended multiple punishments for unitary conduct." 112 N.M. at 14, 810 P.2d at 1234.

Generally, "a criminal statute written in the alternative creates a separate offense for each alternative and should therefore be treated for double jeopardy purposes as separate statutes would." *State v. Rodriguez*, 113 N.M. 767, 771, 833 P.2d 244, 248 (Ct. App. 1992) (internal quotation marks and citation omitted). In the absence of a clear statement of intent from the Legislature to create separate offenses within a single statute, we first analyze the statutes in question under the analysis originally used in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), which provides that, when the "same act or transaction constitutes a violation of two distinct

9

statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact the other does not." *Swafford*, 112 N.M. at 8, 810 P.2d at 1228.

To apply the test, we compare the elements of the underlying offenses; "if each statute requires an element of proof not required by the other, it may be inferred that the [L]egislature intended to authorize separate application of each statute." *Id.* at 9, 810 P.2d at 1229. Conviction under Subsection (B) requires proof that Defendant intentionally fled the scene in order to evade capture, which Subsection (D) does not require. In other words, Defendant's act of fleeing from Officer Acata is not required for his conviction under Subsection (D). Conviction under Subsection (D) requires that Defendant resisted or abused Officer Acata, which Subsection (B) does not require. In other words, Defendant's act of elbowing Officer Acata is not required for his conviction under Subsection (B). Under *Swafford*, this difference creates a rebuttable presumption that the Legislature intended the statutes in question to create separate offenses. *Id.* at 14, 810 P.2d at 1234.

Having concluded that each statute contains unique elements under the *Blockburger* analysis, we must consider whether any other "indicia of legislative intent" present evidence to overcome the presumed intent of the Legislature. *Swafford*, 112 N.M. at 14, 819 P.2d at 1234. In order to ascertain these indicia, we consider the

10

"social evils sought to be addressed by each offense." *Id.* at 9, 810 P.2d at 1229. This analysis ensures that there is a practical, as well as a technical, difference between the two subsections.

> [A] statute that is multi-purposed and written with many alternatives, or is vague and unspecific, may have many meanings and a wide range of deterrent possibilities. . . . It therefore makes more sense to ascertain the operation and deterrent purposes of such statutes for double jeopardy purposes by determining the elements—the legal theory—that constitute the criminal causes of action in the case at hand.

*Rodriguez*, 113 N.M. at 771, 833 P.2d at 248 (alteration in original) (internal quotation marks and citation omitted). If each subsection has a different deterrent effect, we can infer that the Legislature intended each subsection to warrant separate punishment. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234 ("Statutes directed toward protecting different social norms and achieving different policies can be viewed as separate and amenable to multiple punishments.").

In this case, the subsections of Section 30-22-1 are designed to deter different conduct. Subsection (B) deters fleeing police, which allows police to more effectively enforce the law. Subsection (D) deters abusing or physically resisting police, which helps ensure officer safety. Although both subsections apply to Defendant's conduct, they are each aimed at different social evils. We therefore do not believe that *LeFebre* controls this case. Unlike this case, the defendant in *LeFebre* was prosecuted under Subsections (B) and (C) for fleeing the police in a car and then on foot. *LeFebre*,

11

2001-NMCA-009, ¶ 1. Both Subsections (B) and (C) deter the same conduct—flight from police—the only difference between the subsections is a defendant's use of a car. In this case, unlike *LeFebre*, the conduct deterred by the subsections at issue are different. This difference in the conduct addressed in the subsections further demonstrates the Legislature's intent to punish offenses under Subsections (B) and (D) separately.

**CONCLUSION**

For the foregoing reasons, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**I CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

**TIMOTHY L. GARCIA, Judge (dissenting)**

**GARCIA, Judge (dissenting).**

12

I write to respectfully dissent from the majority decision because this case should not be distinguished from our decision in *LeFebre*. Defendant's conduct was unitary in his successful efforts to flee from Officer Acata. *See LeFebre*, 2001-NMCA-009, ¶ 17 (recognizing that "[c]onduct is unitary if it is not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished"). First, Defendant was required to escape from the grasp of Officer Acata as the initial step in his efforts to flee. These efforts involved the struggle that resulted in the separate conviction for resisting and abusing Officer Acata. Second, once Defendant actually escaped Officer Acata's grasp, he needed to run away as the next step in his successful efforts to flee from the officer. This act of intentionally running away resulted in the second conviction for resisting and evading Officer Acata. The majority agrees that these acts occurred in a contemporaneous manner. This is clearly the type of unitary conduct and intent that should establish only one conviction under Section 30-22-1. *See LeFebre*, 2001-NMCA-009, ¶ 18 (recognizing that the singular intent to evade apprehension by two distinct ways, by automobile and on foot, constituted one unitary act of attempting to evade police officers); *State v. Schackow*, 2006-NMCA-123, ¶¶ 19-20, 140 N.M. 506, 143 P.3d 745 (recognizing that the conduct of committing attempted CSP and assault with intent to commit CSP were unitary acts that occurred simultaneously and the defendant's

13

objectives and results arose from one singular purpose).

The majority characterizes the events as a scenario where Defendant engaged in a fight with Officer Acata and once the fight concluded, he then decided to run away and flee. This is inconsistent with Officer Acata's testimony that Defendant appeared to be looking for a way to escape when Officer Acata initially approached Defendant's vehicle. The act of escaping and fleeing the scene occurred shortly thereafter while Officer Acata was in the process of handcuffing Defendant while he was on his knees. The brief struggle only occurred because Defendant was in Officer Acata's grasp at the time he was being handcuffed and decided to flee. This was the only time that physical resistance occurred, and it was at the same time Defendant initiated his escape and ultimately fled from the officer. In addition, Defendant's actions in fleeing the officer were the only remaining factual issues after the jury acquitted Defendant of the battery charge arising from his struggle to escape. I cannot agree with the distinctions identified by the majority in determining that Defendant's conduct was not unitary when he decided to escape and flee from Officer Acata.

Once unitary conduct is established, the second step in the *Swafford* analysis must also be addressed. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234 (determining whether the statutes at issue contain a clear expression of legislative intent to create separately punishable offenses for the unitary conduct that occurred). This analysis

14

was undertaken in *LeFebre* and the circumstances in the present case are not sufficiently unique to require reconsideration of our previous determination. *LeFebre*, 2001-NMCA-009, ¶¶ 19-23.

The majority disagrees and determined that the *Swafford* analysis in *LeFebre* should not apply. If the Legislature intended the act of fleeing an officer to be distinguished into separate crimes depending upon whether the officer has a defendant in his grasp or not, then the statute would have been written in a way to clearly express such an intention. No such language exists under a common sense reading of Section 30-22-1 and an overly technical interpretation of the statute is not warranted. The *Swafford* analysis in *LeFebre* should continue to control the outcome in this factual situation. The act of fleeing while in an officers grasp involves the underlying principles of both resisting and evading. As is the case before us, the separate statutory offenses of assault and battery are adequate to address any other conduct that may occur during a struggle to flee. As a result, one count of resisting, evading, or obstructing an officer under Section 30-22-1 should be vacated for violation of Defendant's protection from double jeopardy guaranteed by the Fifth Amendment of the United States Constitution and Article II, Section 15 of the New Mexico Constitution.

_____
**TIMOTHY L. GARCIA, Judge**