This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO**,

     Plaintiff-Appellee,

v.                                         **NO. 29,065**

**CODY LITTLE**,

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G.W. Shoobridge, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Francine A. Chavez, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ROBLES, Judge.**

Defendant appeals his convictions for battery on a peace officer and resisting, evading, or obstructing an officer. On appeal, he contends that his convictions violate double jeopardy principles and that the district court erred in refusing to give a jury instruction on self defense. For the reasons that follow, we reverse in part and affirm in part.

**I.     BACKGROUND**

Defendant's convictions arose out of an incident that occurred in Lovington, New Mexico on December 16, 2007. Officer Pete Honigmann responded to a disturbance call at a private residence. While investigating, the officer spoke with Holly Humble and David Sherman, who advised him Defendant had been at the residence earlier that evening despite having previously signed a criminal trespass warning. Sherman, who appeared angry, got into his truck and left. Because the officer was concerned that Sherman intended to seek Defendant out, and he wished to pursue the investigation further, the officer returned to his patrol car to search for either or both of them.

Officer Honigmann spotted Sherman's truck in the middle of the road near an intersection. Sherman was sitting behind the wheel speaking to Defendant, who was

standing by the driver's side window. The officer pulled over and parked under a street light. He then got out of his patrol car and shouted "[p]olice" as he approached. Defendant then stepped away from the truck and began walking north, and Sherman drove away. The officer pursued Defendant on foot and shouted: "Police! Come back over here." Defendant continued to walk away. When the officer repeated his previous command, Defendant threw up his hand, shouted an obscenity, and continued walking away. Defendant then started running. The officer pursued and, ultimately, tackled Defendant on a lawn. He then attempted to gain control of Defendant and handcuff him in order to take him into custody. Defendant physically resisted, struggled, and then hit the officer on the neck with his fist. Defendant once again shouted an obscenity. The struggle continued, despite the officer's commands to stop resisting. As a result of Defendant's continuing resistance, the officer dropped the handcuffs and ended up lying on the ground with his feet up trying to defend himself. While kneeling near his feet, Defendant reached behind his back and stated that he was going to "fuck [Officer Honigmann] up." Believing that Defendant was going to retrieve a weapon, the officer sprayed Defendant in the face with pepper spray. He then placed a second pair of handcuffs on Defendant without further incident.

Based on the foregoing events, Defendant was charged with both battery on a peace officer and resisting, evading, or obstructing an officer. At trial, defense

3

counsel requested jury instructions on self defense. The court declined to give the requested instructions, and the jury, ultimately, returned guilty verdicts on both counts. This appeal followed.

## II.     DISCUSSION

## A.     Double Jeopardy

Defendant contends that his convictions for resisting, evading, or obstructing an officer and battery on a peace officer violate double jeopardy. Double jeopardy presents a question of law, which we review de novo. *State v. Bernal*, 2006-NMSC-050, ¶ 6, 140 N.M. 644, 146 P.3d 289.

Insofar as Defendant was charged with violation of multiple statutes, we are presented with a "double-description" issue. *State v. Ford*, 2007-NMCA-052, ¶ 8, 141 N.M. 512, 157 P.3d 77 (classifying a double jeopardy challenge to separate convictions for resisting, evading, or obstructing an officer and battery on a peace officer as a double-description issue). We apply a two-part test to double-description cases. *Id.* ¶ 9. "[F]irst, we determine whether the [underlying] conduct is unitary." *Id.* ¶ 10. "If the conduct is non-unitary, multiple punishments do not violate the Double Jeopardy Clause, and our examination ends." *Id.* However, "if the conduct can reasonably be said to be unitary," we proceed to determine "whether the

4

[L]egislature intended multiple punishments." *Id.* (alteration in original) (internal quotation marks and citation omitted).

The unitary conduct inquiry focuses on whether the defendant's acts are separated by sufficient "indicia of distinctness." *Swafford v. State*, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991). "[W]e consider such factors as whether the acts were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and [the] defendant's goals for and mental state during each act." *Ford*, 2007-NMCA-052, ¶ 12.

Applying the foregoing factors, we observe that the entire incident appears to have occurred within a short period of time and within the limited space of approximately one city block. Defendant's convictions for both crimes were based on his resistance to Officer Honigmann's attempts to apprehend him, entailing acts of struggling, grappling, and striking, which appear similar in character and quality. With respect to sequencing, the blow to the neck occurred in the midst of the larger, continuous episode of resistance. No intervening event or break in the action occurred. Finally, the evidence suggests a single object of continuing resistance to the officer's attempts to apprehend him. The foregoing considerations all support the conclusion that Defendant's conduct was unitary.

We note the similarity to the scenario addressed in *Ford*. In that case as in this one, the defendant's convictions for resisting, evading, or obstructing an officer and battery on a peace officer were based on his acts of struggling while the officers were trying to effectuate an arrest. 2007-NMCA-052, ¶¶ 13-14. The acts occurred close in time and, *id.* ¶ 14, although the struggling and kicking occurred in slightly different places, they were in close proximity. *Id.* ¶ 15. The defendant's acts of struggling and kicking were also deemed similar in quality and nature. *Id.* ¶¶ 14-16. Moreover, the kicking occurred at the conclusion of the larger, continuous episode of struggling, during which no intervening event or break in the action was suggested. *Id.* ¶¶ 13-14. Finally, the defendant's acts occurred in response to the officers' attempts to effectuate an arrest and, therefore, appeared to have the same object of resistance thereto. *Id.* ¶ 14. Insofar as the conduct at issue in this case is so analogous to the conduct addressed in *Ford*, we conclude that the conduct is unitary for double jeopardy purposes. *See id.* ¶ 16 (concluding that the defendant's conduct was unitary).

The State contends that this case should be deemed more analogous to *State v. Lopez*, 2008-NMCA-111, 144 N.M. 705, 191 P.3d 563. In *Lopez*, the defendant's "act of fleeing was punctuated by a distinct change in character and quality when he stopped fleeing, turned toward the officer in an attack posture, came back to the

officer, and punched him twice in the face, drawing blood." *Id.* ¶ 10. Moreover, "at the time [the d]efendant stopped fleeing and physically attacked the officer, [the d]efendant's purpose changed from simply trying to escape into physical violence directed at the officer." *Id.* Accordingly, both "the quality and nature of the individual acts, and the objectives and results involved, changed significantly," such that the conduct at issue was properly deemed non-unitary. *Id.* (internal quotation marks and citation omitted).

In this case, by contrast, the quality and character of Defendant's conduct did not significantly change in the course of the episode. Unlike the facts presented in *Lopez*, Defendant neither deliberately ceased fleeing nor turned to attack. To the contrary, Defendant only stopped and came into physical contact with Officer Honigmann because he was tackled. Although Defendant struck the officer, the blow occurred in the course of the struggle that took place on the ground after Defendant had been tackled, and it appears to have been similar in nature to his other acts of physical resistance. *See Ford*, 2007-NMCA-052, ¶ 14 (characterizing a kick as similar to other acts of resistance occurring in the course of a struggle to resist arrest).

Nor do we perceive any basis for an inference of altered purpose. As previously stated, the object throughout the episode appears to have been resistance to Officer Honigmann's attempts to effectuate an arrest. Although the State contends

that Defendant's menacing comment while kneeling at the officer's feet should be regarded as an indication of changed purpose, the comment was made after the blow had already occurred and at the conclusion of the struggle, immediately before the officer sprayed Defendant with pepper spray. Insofar as no physical contact occurred after the comment was made, the comment cannot be said to reflect an altered purpose in aid of the battery conviction.

Finally, the State suggests that Defendant's convictions can be upheld on the theory that he completed the offense of resisting, evading, or obstructing when he fled, whereas, the battery occurred in the course of the separate and subsequent physical struggle. However, double jeopardy concerns "cannot be avoided by the simple expedient of dividing conduct into a series of temporal and spatial units." *Lopez*, 2008-NMCA-111, ¶ 10. As *Ford* and *Lopez* both illustrate, we must consider the entire uninterrupted episode, rather than artificially compartmentalizing the pertinent events. *See State v. Padilla*, 101 N.M. 78, 79, 678 P.2d 706, 707 (Ct. App. 1983) (indicating that an episode much like the one at bar could not be broken down into discreet parts), *rev'd in part on other grounds*, 101 N.M. 58, 678 P.2d 686 (1984).

Because we have concluded that the conduct at issue in this case is unitary, we must proceed to the second step of the double jeopardy analysis. Legislative intent with respect to the offenses of resisting, evading, or obstructing an officer and battery

8

on a peace officer was evaluated in *Ford*. Comparing the applicable statutory provisions, the Court observed that the elements of the former are subsumed within the elements of the latter. 2007-NMCA-052, ¶¶ 18-21.

In this case, the offenses incorporate the same elements as those addressed in *Ford*. Insofar as the elements of resisting are subsumed within the elements of battery on a peace officer, our inquiry is at an end. *See State v. Lee*, 2009-NMCA-075, ¶ 9, 146 N.M. 605, 213 P.3d 509 (observing that "[i]f . . . one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both" (internal quotation marks and citation omitted)), *cert. denied*, 2009-NMCERT-006, 146 N.M. 733, 215 P.3d 42.

The State suggests that the foregoing strict comparison of the elements of the offenses is not controlling because the evidence presented in this case could have been parsed out to provide different factual predicates for each conviction. However, for the reasons previously stated, we reject the State's attempt to divide the underlying conduct into discrete, temporal units and, instead, regard the episode as a whole as the appropriate unit of analysis. *See generally Lopez*, 2008-NMCA-111, ¶¶ 9-13 (illustrating this general approach); *Ford*, 2007-NMCA-052, ¶¶ 12-16 (same); *Padilla*, 101 N.M. at 79, 678 P.2d at 707 (same). Moreover, in this context, it is inappropriate to consider the case-specific facts or evidence when comparing the elements of the

9

offenses. *See State v. Armendariz*, 2006-NMSC-036, ¶ 21, 140 N.M. 182, 141 P.3d 526 (observing that the test of *Blockburger v. United States*, 284 U.S. 299 (1932) "focuses strictly upon the elements of the statutes. . . . [E]vidence and proof offered at trial are immaterial" (internal quotation marks omitted)).

In summary, Defendant was convicted of two offenses arising out of unitary conduct. Because the elements of one of these offenses are subsumed within the elements of the other, Defendant's right to be free from double jeopardy was violated. *Ford*, 2007-NMCA-052, ¶ 23. Defendant's conviction for resisting—being the lesser offense—must therefore be vacated. *See id.*

**B.     Self-Defense Instruction**

Defendant contends that the trial court erred in rejecting his proposed jury instructions on self defense. "When, as in this case, a challenge to the jury instructions has been preserved, we review for reversible error." *State v. Ellis*, 2008-NMSC-032, ¶ 14, 144 N.M. 253, 186 P.3d 245. "The trial court's rejection of [the d]efendant's submitted jury instructions is reviewed by this Court de novo, because it is closer to a determination of law than a determination of fact." *Id.* (internal quotation marks and citation omitted).

In *Ellis*, our Supreme Court explained that a person has only a qualified right to assert self defense against a police officer because police officers have a duty to

make arrests, and a right to use reasonable force when necessary. *Id.* ¶ 15 (citing *State v. Kraul*, 90 N.M. 314, 319, 563 P.2d 108, 113 (Ct. App. 1977)). Generally, it is the jury that is called upon to determine both the objective reasonableness of the officer's use of force and the reasonableness of the defendant's resort to self defense. *Ellis*, 2008-NMSC-032*, ¶¶ 31-32. However, prior to sending the matter to the jury, "the court must first be persuaded that reasonable minds could differ on whether the officer's use of force was excessive, such that a reasonable jury could so conclude." *Id.* ¶ 34.

In *Ellis*, in the course of a traffic stop, a police officer drew his weapon in response to the defendant's very aggressive and hostile behavior. *Id.* ¶ 37. Because the officer had "increased his use of force incrementally and in proportion to the circumstances with which he was confronted," and because he only drew his weapon "when provoked and in an effort to control the situation and to subdue a hostile, aggressive [d]efendant," the Court concluded that "[n]o reasonable jury could conclude that [the officer] used excessive force under these circumstances." *Id.* ¶ 41.

Turning to the facts at issue in this case, as previously described, Defendant was under investigation for violating a criminal trespass warning. Officer Honigmann approached and shouted "[p]olice." Defendant proceeded to walk away. The officer followed Defendant and shouted "[p]olice! Come back here." Defendant continued

11

to walk away. When Defendant shouted an obscenity and began to run, the officer gave chase, overtook Defendant, and tackled him on a lawn. Once on the ground, Defendant struck the officer. While struggling on the ground, the officer commanded Defendant to stop resisting. Defendant ignored the command and wound up kneeling above the officer as he lay in a prone position. Defendant then stated that he was going to "fuck [Officer Honigmann] up," and reached behind his back. Fearing that Defendant was going to retrieve a weapon, the officer then sprayed Defendant with pepper spray.

As in *Ellis*, the officer in this case increased his use of force incrementally and in proportion to the circumstances with which he was confronted. When he located Defendant, Officer Honigmann issued several warnings to Defendant to stop. He pulled Defendant to the ground only after several unheeded warnings to stop, and he used pepper spray only after Defendant threatened him. As in *Ellis*, "we have little difficulty concluding, as a matter of law, that [the officer in this case] used an amount of force that was reasonably necessary given the circumstances with which he was faced." *Id.* We therefore conclude that Defendant was not entitled to a self-defense instruction.

**III. CONCLUSION**

For the foregoing reasons, we reject Defendant's challenge to the denial of his requested jury instructions on self defense. However, we further hold that Defendant's convictions for resisting, evading, or obstructing an officer and battery on an officer violate double jeopardy. We therefore remand to the district court to vacate Defendant's conviction for resisting, evading, or obstructing an officer and to resentence Defendant accordingly.

**IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**LINDA M. VANZI, Judge**