This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40575**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.

**ERRICK BEGAY,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Associate Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ATTREP, Chief Judge.**

**{1}** This Court issued an opinion on October 30, 2024, which is hereby withdrawn and replaced with this opinion, following the denial of Defendant Errick Begay's motion for rehearing. Defendant appeals one of his six convictions for criminal sexual penetration of a minor (CSPM) in the first degree (child under thirteen years of age), NMSA 1978, § 30-9-11(D)(1) (2009), and his conviction for criminal sexual contact of a minor (CSCM) in the third degree (child under thirteen years of age), NMSA 1978, § 30-

9-13(C)(1) (2003). Defendant raises a single issue on appeal—that these two convictions violate double jeopardy. We affirm.

## DISCUSSION

**{2}** Defendant was charged with sexually assaulting and abusing Victim, his then-girlfriend's minor daughter, on multiple occasions between February and December 2020. Ultimately, Defendant was convicted of six counts of CSPM, one count of CSCM, and one count of child abuse. On appeal, Defendant only challenges his convictions for CSPM and CSCM occurring on February 2, 2020—the first time Defendant raped Victim. Defendant contends these convictions violate the double jeopardy guarantee against multiple punishments for the same conduct.

**{3}** "A double jeopardy challenge is a constitutional question of law which we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. Defendant raises a double description challenge, in which the same course of conduct results in multiple charges under different criminal statutes. *See State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61. In analyzing such challenges, we apply the two-part test set forth in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223: (1) whether the conduct is unitary, and (2) if so, whether the Legislature intended to punish the offenses separately. *State v. Silvas*, 2015-NMSC-006, ¶ 9, 343 P.3d 616. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.* (internal quotation marks and citation omitted). Because we conclude that Defendant's conduct was not unitary, we need not address the second *Swafford* prong. *See Swafford*, 1991-NMSC-043, ¶ 28 ("[I]f the conduct is separate and distinct, [our] inquiry is at an end."); *Swick*, 2012-NMSC-018, ¶ 11 ("If [conduct] is not [unitary], then there is no double jeopardy violation.").

**{4}** The resolution of the unitary conduct question "depends to a large degree on the elements of the charged offenses and the facts presented at trial." *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks and citation omitted). "The proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *Id.* (internal quotation marks and citation omitted). "[S]eparate punishments may be imposed if the offenses are separated by sufficient indicia of distinctness." *Id.* (internal quotation marks and citation omitted). "Sufficient indicia of distinctness are present when the illegal acts are sufficiently separated by either time or [physical] space." *State v. Sena*, 2020-NMSC-011, ¶ 46, 470 P.3d 227 (internal quotation marks and citation omitted). "Time and space considerations, however, cannot resolve every case and resort must be had to the quality and nature of the acts or to the objects and results involved." *Swafford*, 1991-NMSC-043, ¶ 28. "Distinctness may also be established by the existence of an intervening event, the defendant's intent as evinced by [their] conduct and utterances, the number of victims, and the behavior of

the defendant between acts." *State v. Barrera*, 2001-NMSC-014, ¶ 36, 130 N.M. 227, 22 P.3d 1177 (internal quotation marks and citation omitted).[1]

**{5}** In this case, the CSCM jury instruction required the State to prove beyond a reasonable doubt that Defendant "touched or applied force to the unclothed breasts" of Victim. By contrast, the CSPM jury instruction required the State to prove beyond a reasonable doubt that Defendant "caused [Victim] to engage in anal intercourse." Both of these instructions reference a single date—February 2, 2020. To prove these offenses, the State elicited several minutes of testimony from Victim about the first time Defendant raped her. In particular, Victim testified that when she was clothed, Defendant touched her "chest area" and "private parts"[2] with his hand underneath her clothing. Victim further testified that Defendant "stuck his private parts in my private parts," clarifying that Defendant penetrated her "butt." Victim explained that Defendant initially was clothed; "but when he did it to me, he took . . . off" his pants and underwear and "mostly all my clothing."[3] Victim went on to testify about other incidents when Defendant raped her.

**{6}** The State contends the offenses were distinct and the foregoing testimony established that Defendant first committed CSCM, then removed his and Victim's clothing, and then committed CSPM. Defendant replies that this sequence was not established and it is possible that "the penetration and touching happened simultaneously." Defendant otherwise argues that Victim's testimony lacks sufficient detail to determine his conduct was not unitary as a matter of law. It is true that Victim's testimony did not describe the events on February 2, 2020, with much detail, particularly in terms of time and space, or definitively establish the sequencing of the criminal acts, i.e., that the CSPM occurred after the CSCM. We, however, do not agree with Defendant that Victim's testimony can be viewed such that the jury reasonably could have found the offenses occurred simultaneously or that her testimony was insufficiently detailed for the jury to have "reasonably . . . inferred independent factual bases" for the two offenses. *See Franco*, 2005-NMSC-013, ¶ 7 (internal quotation marks and citation omitted); *cf. State v. Lente*, 2019-NMSC-020, ¶¶ 52-53, 63-64, 84, 453 P.3d 416 (providing that, to sustain child sex abuse convictions, highly specific testimony of each

---

[1] Our Supreme Court has made clear that the unitary conduct inquiry is the same inquiry as in *Herron v. State*, 1991-NMSC-012, 111 N.M. 357, 805 P.2d 624—the principal case examining whether distinct acts support multiple counts in unit-of-prosecution double jeopardy challenges. *See State v. Phillips*, 2024-NMSC-009, ¶¶ 12, 38, 548 P.3d 51 (applying the *Herron* factors—"(1) temporal proximity of the acts, (2) location of the victim during each act, (3) the existence of intervening events, (4) the sequencing of the acts, (5) the defendant's intent as evidenced by his conduct and utterances, and (6) the number of victims"—"in the double description analysis to determine whether a defendant's acts are unitary or distinct"). We thus find unit-of-prosecution cases pertinent to our unitary conduct analysis.

[2] Defendant was not separately charged or convicted of CSCM for touching Victim's "private parts."

[3] Defendant contends that this portion of Victim's testimony was "not solely about the first incident in early February 2020, but about how the assaults unfolded in general." Because of this, Defendant argues, the Court would have to impermissibly rely on speculation to determine the "sequence of events for the first incident." Defendant does not, however, argue that Victim's testimony about how Defendant generally accomplished CSPM is inapplicable to the February 2, 2020, incident. And, as discussed below, even if Victim's testimony is inadequate to establish the exact sequencing of events on February 2, 2020, this does not make Defendant's conduct unitary.

instance of abuse is not necessary as long as there still exists sufficient evidence to allow the jury to differentiate between the alleged acts). We explain.

**{7}** Victim's testimony clearly separates the criminal acts: at one point, Defendant reached underneath Victim's clothing with his hand to touch her unclothed breasts and private parts; and at another point, Defendant anally penetrated Victim with his penis after removing most of his and Victim's clothing. Regardless of the sequence in which Defendant committed the criminal acts, they plainly did not occur simultaneously, as Defendant suggests. Even if Defendant did not remove Victim's shirt when he anally penetrated her, as Defendant seems to intimate, Victim testified that the CSCM occurred when she was fully clothed such that Defendant would have had to reach under her top to touch her breasts and under her bottoms and underwear to touch her "private parts." In contrast, Victim testified that the CSPM occurred after Defendant had taken off most of her clothing. Defendant does not contest that this meant he had to remove Victim's bottoms and underwear so that he could penetrate Victim's anus with his penis. Thus, Defendant's contention that the criminal acts occurred simultaneously is not well taken.

**{8}** Furthermore, several indicia of distinctness are apparent from Victim's testimony. First, the removal of both Defendant's and Victim's clothing served as an intervening event between the offenses. *See State v. Haskins*, 2008-NMCA-086, ¶ 19, 144 N.M. 287, 186 P.3d 916 (considering the act of the victim getting dressed and relocating to another room between touchings to be a sufficient intervening event to support separate charges for criminal sexual contact); *see also Phillips*, 2024-NMSC-009, ¶¶ 12, 38 (listing "the existence of intervening events" as a relevant factor in the unitary conduct analysis). The existence of an intervening event makes this case distinguishable from *State v. Ervin*, 2008-NMCA-016, ¶¶ 45-47, 143 N.M. 493, 177 P.3d 1067, on which Defendant relies, where the touching of different body parts was held to lack sufficient indicia of distinctness to support multiple convictions. *See id.* ¶ 45 ("[T]he touching of [the c]hild's body during one massage, over a short period of time, with no intervening event, with no movement to a different place or area, and no repositioning of [the c]hild, with one intent to massage her body, is simply one continuous touching of [the c]hild's private parts." (alterations and internal quotation marks omitted)).

**{9}** Second, the fact that Defendant violated the bodily integrity of two of Victim's body parts (i.e., breasts and anus) contributes to a finding of separate offenses. *See Haskins*, 2008-NMCA-086, ¶ 19 (stating the principle that the serial penetration of different orifices generally supports a finding of separate offenses, and analogizing this principle to the criminal sexual contact context to conclude that the touching of three different areas on the victim's body, while not dispositive, weighed "heavily" in favor of finding sufficient distinctness among events); *State v. Wilson*, 1993-NMCA-074, ¶ 9, 117 N.M. 11, 868 P.2d 656 (providing that "[u]nder *Herron*, penetrations of separate orifices with the same object constitute separate offenses," and "[t]herefore, the acts of anal intercourse, sexual intercourse, and at least one instance of fellatio constitute separate offenses").

**{10}** Lastly, there is a qualitative difference between Defendant's acts to accomplish each criminal offense. Defendant's penetration of Victim's anus with his penis is plainly distinct in quality and severity from his fondling of Victim's breasts with his hand underneath Victim's clothing. This supports a conclusion that "the quality and nature of the individual acts" changed significantly from one offense to the other. *See State v. Lopez*, 2008-NMCA-111, ¶ 10, 144 N.M. 705, 191 P.3d 563 (internal quotation marks and citation omitted); *see also id.* (concluding that there was "a distinct change in character and quality" of the defendant's acts when the defendant, after fleeing for some time, turned to a pursuing officer and punched him); *cf. State v. Cordova*, 1999-NMCA-144, ¶ 23, 128 N.M. 390, 993 P.2d 104 (finding the defendant had a "distinct intent" when he restrained the victim to commit CSCM and then, a short time later, restrained the victim to kiss her).

**{11}** In sum, the offenses were separated by an intervening event, Defendant violated the bodily integrity of two of Victim's body parts, and the illegal acts were qualitatively distinct. Accordingly, we hold that the conduct at issue here is not unitary, and Defendant's double jeopardy rights thus were not violated by the convictions for both CSCM and CSPM. *See Swafford*, 1991-NMSC-043, ¶ 28; *Swick*, 2012-NMSC-018, ¶ 11.

**CONCLUSION**

**{12}** For the foregoing reasons, we affirm Defendant's convictions.

**{13}  IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Chief Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**KATHERINE A. WRAY, Judge**